IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

WILLIAM M. BARRETT, Individually and as the representative of a class consisting of the participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan,

        Plaintiff,

v.

PIONEER NATURAL RESOURCES USA, INC.; THE PIONEER NATURAL RESOURCES USA INC. 401(K) AND MATCHING PLAN COMMITTEE; THERESA A. FAIRBROOK; TODD C. ABBOTT; W. PAUL MCDONALD; MARGARET M. MONTEMAYOR; THOMAS J. MURPHY; CHRISTOPHER M. PAULSEN; KERRY D. SCOTT; SUSAN A. SPRATLEN; LARRY N. PAULSEN; MARK KLEINMAN; and RICHARD P. DEALY

        Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff William M. Barrett, individually and as representative of participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan (the "Plan"), brings this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1001 et seq., on behalf of the Plan against the Plan sponsor, Defendant Pioneer Natural Resources USA, Inc. ("Pioneer USA"), the Plan Administrator, Pioneer Natural Resources USA Inc. 401(K) and Matching Plan Committee (the "Committee") and the past and present members of the Pioneer Natural Resources USA Inc. 401(K) and Matching Plan Committee (collectively the "Pioneer Defendants") for breaching their fiduciary duties in the management, operation and administration of the Plan.

**PRELIMINARY STATEMENT**

1.    Plaintiff William Barrett is a participant in the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan.

2.      A 401(k) plan is an employer-sponsored defined contribution retirement plan that enables employees to make tax-deferred contributions from their salaries to the plan. Employers also may make contributions into employee accounts. Typically, plan participants direct the investment of their accounts, choosing from the lineup of options offered in the plan. With $4.4 trillion in assets at the end of the second quarter of 2014, 401(k) plans have become one of the largest components of U.S. retirement assets, accounting for nearly one-fifth of all retirement assets. More than 52 million workers were actively participating in 401(k) plans in 2012, making them one of the most common sources of retirement assets.[1]

3.      In a defined contribution plan, participants' retirement benefits are limited to the value of their own individual accounts, which is determined solely by employee and employer contributions plus the amount gained through investment in the options made available in the plan less expenses. *See* 29 U.S.C. §1002(34).

4.      Because retirement savings in defined contribution plans grow and compound over the course of the employee participants' careers, poor investment performance and excessive fees can dramatically reduce the amount of benefits available when the participant is ready to retire. Over time, even small differences in fees and performance compound and can result in vast differences in the amount of savings available at retirement. As the Supreme Court has explained, "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015).

5.      The impact of excessive fees on employees' and retirees' retirement assets is dramatic. The U.S. Department of Labor has noted that a 1% higher level of fees over a 35-year

---

[1] The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans at 9 (Dec. 2014), available at https://www.ici.org/pdf/ppr_14_dcplan_profile_401k.pdf

period makes a 28% difference in retirement assets at the end of a participant's career. U.S. Dep't of Labor, A Look at 401(k) Plan Fees, at 1–2 (Aug. 2013).[2]

6.      The marketplace for retirement plan services is established and competitive. On December 31, 2015, the Plan had $500,187,123 in assets, which makes it one of the top .4% (based on assets) of over 800,000 401(k) plans offered to participants[3]. As a result, the Plan has tremendous bargaining power to demand low-cost administrative and investment management services and well-performing, low cost investment funds.

7.      However, instead of leveraging the Plan's bargaining power to benefit participants and beneficiaries, the Pioneer Defendants chose inappropriate, higher cost mutual fund share classes and caused the Plan to pay unreasonable and excessive fees for recordkeeping and other administrative services.

8.      ERISA imposes strict fiduciary duties of prudence and loyalty on covered retirement plan fiduciaries. An ERISA fiduciary must discharge his responsibility "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1). These duties require fiduciaries to act "solely in the interest of [plan] participants and beneficiaries." *Id*. These duties include a continuing duty to monitor investments and remove imprudent ones. *Tibble,* 135 S. Ct. at 1829.

9.      Pioneer USA, as the Plan Sponsor, and the Committee as the Plan Administrator breached their fiduciary duties of prudence and loyalty by:

          a.  Failing to offer institutional class shares for mutual funds, which resulted in the participants paying excessive costs to invest in the funds;

---

[2] Available at https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/401kFeesEmployee.pdf

[3] http://www.plansponsor.com/2015-Recordkeeping-Survey/

b.  Failing to make sure that Plan fees were reasonable; and

c.  Failing to remove the poorly performing money market fund when the stable value fund was available, causing losses to Plan participants who maintained excessively high cash balances in money market funds rather than the stable value fund, which offered higher returns and the same risk level.

10.    Plaintiff, individually and as the representative of a class consisting of the Plan's participants and beneficiaries, brings this action on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and (3) to enforce the Pioneer Defendants' liability under 29 U.S.C. § 1109(a), to make good to the Plan all losses resulting from their breaches of fiduciary duties, and to restore to the Plan any lost profits. In addition, Plaintiff seeks to reform the Plan to comply with ERISA and to prevent further breaches of fiduciary duties and grant other equitable and remedial relief as the Court may deem appropriate.

## PARTIES

### The Plan

11.    The Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan is established and maintained by a written plan document as required by 29 U.S.C. §1102(a)(1).

12.    The Plan is an "employee pension benefit plan" under 29 U.S.C. §1002(2)(A), and an "individual account plan" or "defined contribution plan" under 29 U.S.C. §1002(34). Employees who are eligible to participate in the Plan contribute to their individual accounts through payroll deductions.

13.    As of December 31, 2015, the Plan had 4,410 participants and $500,187,123 in assets.

### Defendants

4

14.    Pioneer Natural Resources USA, Inc. is a wholly owned subsidiary of Pioneer natural resources, Inc. a large, independent publicly traded (NYSE: PXD) oil and gas exploration and production company incorporated in Delaware and headquartered in Irving, Texas. Pioneer does business in Colorado, where it is the largest oil and gas operator in the Raton Basin in southeastern Colorado with approximately 198,000 gross acres and 2,300 wells.

15.    Pioneer USA is the Plan Sponsor as defined under 29 U.S.C § 1002(16)(B). Pioneer is a fiduciary to the Plan under 29 U.S.C. §1002(21)(A)(i) and (iii) because upon information and belief, the Pioneer USA Board of Directors has the sole authority to appoint and remove members of the Pioneer Natural Resources USA Inc. 401(K) and Matching Plan Committee, amend or terminate, in whole or part, the Plan or the Trust, and is designated as a fiduciary under the Plan.

16.    The Pioneer Natural Resources USA Inc. 401(K) and Matching Plan Committee is the Plan Administrator under 29 U.S.C § 1002(16)(A)(i). Upon knowledge and belief, the Committee is a fiduciary to the Plan under 29 U.S.C. §1002(21)(A)(i) and (iii) because the Committee has responsibility and discretionary authority to control the operation, management and administration of the Plan, with all powers necessary to enable it to properly carry out such responsibilities, including the selection and compensation of the providers of administrative services to the Plan and the selection, monitoring, and removal of the investment options made available to participants for the investment of their contributions and provision of their retirement income.

17.    Defendants Theresa A. Fairbrook, Todd C. Abbott, W. Paul McDonald, Margaret M. Montemayor, Thomas J. Murphy, Christopher M. Paulsen, Kerry D. Scott, Susan A. Spratlen, Larry N. Paulsen, Mark Kleinman and Richard P. Dealy (the Individual Defendants") are current or former

members of the Pioneer Natural Resources USA Inc. 401(K) and Matching Plan Committee. The Individual Defendants are fiduciaries to the Plan under 29 U.S.C. §1002(21)(A)(i) and (iii) because as members of the Committee they had responsibility and discretionary authority to control the operation, management and administration of the Plan.

18.    Pioneer, the Committee and the Individual Defendants are collectively referred to as the "Pioneer Defendants."

**Plaintiff**

19.    Plaintiff William Barret is a resident of Trinidad, Colorado. Mr. Barrett is employed by Pioneer in Trinidad Colorado as a Fleet Coordinator, and has been employed by Pioneer for over 30 years. Mr. Barrett is a participant in the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are eligible to receive benefits under the Plan.

**JURISDICTION AND VENUE**

20.    This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

21.    This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b), because Pioneer USA is authorized to do business in Colorado and can be found in this District, and the alleged breaches of the duties imposed by ERISA occurred in this District.

22.    The Court has specific personal jurisdiction over all Pioneer Defendants because they provided services for the Plan in this district and/or they engaged in the conduct described herein which took place in and/or was specifically directed towards Plan participants in this District.

## FACTUAL ALLEGATIONS

**The Pioneer Defendants Caused the Plan Participants to Pay Excessive fees by Failing to Offer Available Lower Cost Share Classes as Plan Investment Options**

23.    The Pioneer Defendants directly and indirectly controlled the available investment options in which the Plan participants could invest their retirement assets.

24.    The Committee and the Individual Defendants routinely selected and retained inappropriate share classes for mutual funds offered as investment options for the Plan. The Committee and the Individual Defendants' failure caused Plan participants to pay excessive fees and expenses to invest in those funds.

25.    A single mutual fund with one portfolio and one investment adviser may offer more than one "class" of its shares to investors. Each class represents a similar interest in the mutual fund's portfolio. The principal difference between the classes is that the mutual fund will charge different fees and expenses depending on the class chosen.

26.    For example, a class A share in a mutual fund may charge an annual expense ratio of 1%, while the institutional or I class share in that same fund with the same advisors and the same investments charges an annual expense ratio of .50%. Thus, an investor who purchases an institutional class share will realize a .50% greater annual return on his/her investment compared to an investor who owns a class A share.

27.    The Pioneer Defendants chose Vanguard Group Inc. ("Vanguard") to serve as the Plan recordkeeper and investment platform. Vanguard is one of the largest investment companies in the world. Vanguard is the recordkeeper for 6,853 plans with 4,186,546 participants and $392 billion in assets.[4]

---

[4] http://www.plansponsor.com/2016-Recordkeeping-Survey/?pid=57&pname=Vanguard

28.     The Pioneer Defendants chose to offer a number of Vanguard proprietary mutual funds as Plan investment options. Vanguard mutual funds typically offer two separate share classes: Investor class and Institutional (now Admiral) class. Vanguard created the Institutional/Admiral share class to pass along the savings that result from investments by larger accounts to the investors who own them. On average, Vanguard Admiral shares expense ratios are 41% lower than Vanguard's standard Investor share class. Generally, Admiral shares require a minimum investment of $10,000 for most index funds and tax-managed funds; $50,000 for most actively managed funds; and $100,000 for certain sector-specific index funds. [5]

29.     The Vanguard Institutional/Admiral share classes existed and were available for inclusion as Plan investment options prior to July 1, 2011. At all relevant times, the information regarding the Institutional/Admiral share classes was publicly and readily available from Vanguard through the various fund prospectuses and on the Vanguard website.

30.     Despite having Plan assets worth hundreds of millions of dollars, the Pioneer Defendants selected higher priced Investor share class of mutual funds, instead of the lower-cost Institutional/Admiral share classes of those same mutual funds which were readily available to the Plan.

31.     The following chart illustrates the differences in the fund expenses between the Investor shares chosen by the Pioneer Defendants and the Institutional/Admiral shares which should have been offered.

| Fund | Investor share class fees | Institutional/ Admiral share class fees | Difference |
|---|---|---|---|
| Vanguard PRIMECAP Fund | 37 bps[6] | 32 bps | 15% |

---

[5] https://investor.vanguard.com/mutual-funds/admiral-shares?lang=en
[6] "Bps" refers to basis points. One hundred basis points is equal to 1.0%.

| | | | |
|---|---|---|---|
| Vanguard 500 Index Fund | 17 bps | 4 bps | 325% |
| Vanguard Windsor II Fund | 36 bps | 25 bps | 36% |
| Vanguard Total Bond Market Index Fund | 20 bps | 7 bps | 185% |
| Vanguard Prime Money Market Fund | 16 bps | 13 bps | 23% |
| Vanguard Intermediate-Term Treasury Fund | 20 bps | 12 bps | 66% |
| Vanguard Wellington Fund | 26 bps | 16 bps | 62% |
| Vanguard Total International Stock Index Fund | 22 bps | 15 bps | 46% |
| Vanguard Total Stock Market Index Fund | 17 bps | 4 bps | 325% |
| Vanguard Inflation-Protected Securities Fund | 20 bps | 7 bps | 285% |
| Vanguard Extended Market Index Fund | 24 bps | 8 bps | 200% |

32.     Although the percentages appear small, the extra fees cost the Plan participants hundreds of thousands of dollars per year. For example, in 2015 alone the Plan participants paid excess fees totaling $53,251 because they invested in the Vanguard 500 Index Fund Investor share class rather than the Admiral share class.

33.     Upon knowledge and belief, the Pioneer Defendants also selected high-priced share classes of mutual funds, instead of identical lower-cost share classes for other mutual funds offered as investment options under the Plan.

34.     In May 2014, Vanguard, on behalf of the Pioneer Defendants, notified Plan participants that different share classes offering lower expense ratios were being offered for four Vanguard funds.

35.     As explained in the notice: "The underlying investment portfolio for each fund will remain the same; the only difference will be the share class." The notice also stated:

"Expense ratios are important because, quite simply, cost matters. Reducing a fund's expense ratio means you get to keep more of what you earn. While you may not notice much difference in the short term, the difference becomes more noticeable the more you save and the longer you keep the money invested…."

36.    The Notice included a chart comparing the expense ratios of the old and new classes, which showed the new fees for three of the funds were 67% lower than the old fees:

| Fund Name | Current Share Class | Expense Ratio | New Share Class | Expense Ratio | Savings per $1,000 invested |
|---|---|---|---|---|---|
| Vanguard Retirement Savings Trust | V | 0.48% | III | 0.38% | $1.00 |
| Vanguard Inflation-Protected Securities | Investor | 0.20% | Institutional | .07% | $1.30 |
| Vanguard Total Bond Market Index Fund | Investor | 0.20% | Institutional | .07% | $1.30 |
| Vanguard Extended market Index Fund | Investor | 0.28% | Institutional | .08% | $1.30 |

37.    Even after notifying the Plan participants in May, 2014 that new mutual fund class shares with lower expenses were available, and that expenses, no matter how small, were important, the Pioneer Defendants continued to offer higher cost Investment class shares to the Plan participants for the remaining nine Vanguard funds.

38.    The Pioneer Defendants had no competent annual review or other process in place to fulfill their continuing obligation to monitor Plan investment choices for performance or to minimize expenses, or in the alternative failed to follow their own processes.

39.    The Pioneer Defendants breached their fiduciary duty to the Plan by failing to conduct a review of all Vanguard funds offered to the Plan participants before and after May 2014 to determine whether different classes with lower expenses were available to the Plan.

**The Pioneer Defendants Caused the Plan Participants to Pay Excessive fees by Failing to**

**Offer Lower-Cost Collective Trust Retirement Funds.**

40.     Collective trusts are a common investment vehicle in large 401(k) plans which provide much lower investment management fees than the Plan's mutual funds. Collective trusts are accessible to plans with $100 million or more in total plan assets.

41.     Vanguard offers five different low-cost collective trust funds to qualified retirement plans, including Target Retirement Trust Select, Target Retirement Trust Plus, and Target Retirement Trust I–III.[7] These target date funds are managed by the same investment adviser as those mutual funds, but have far lower fees than the Vanguard target date mutual funds offered as investment options by the Plan.

42.     The Plan offered the higher-cost mutual fund version of the Vanguard Target Retirement Funds, even though much lower-cost collective trust Vanguard Target Retirement Funds were available to the Plan. The lower-cost collective trust alternatives to the Plan's target date mutual fund options included the following:

| Vanguard Target Retirement Funds offered by the Plan | Vanguard Mutual Fund Fee | Vanguard Collective Trust Fund Fee | Plan's Excess |
|---|---|---|---|
| Vanguard Target Retirement 2010 (Inv) | 16 bps | 8 bps | 100% |
| Vanguard Target Retirement 2015 (Inv) | 16 bps | 8 bps | 100% |
| Vanguard Target Retirement 2020 (Inv) | 16 bps | 8 bps | 100% |
| Vanguard Target Retirement 2025 (Inv) | 17 bps | 8 bps | 113% |

---

[7] Collective trust information is provided on Vanguard's website for institutional investors, at https://institutional.vanguard.com/.

| Vanguard Target Retirement 2030 (Inv) | 17 bps | 8 bps | 113% |
|---|---|---|---|
| Vanguard Target Retirement 2035 (Inv) | 18 bps | 8 bps | 125% |
| Vanguard Target Retirement 2040 (Inv) | 18 bps | 8 bps | 125% |
| Vanguard Target Retirement 2045 (Inv) | 18 bps | 8 bps | 125% |
| Vanguard Target Retirement 2050 (Inv) | 18 bps | 8 bps | 125% |
| Vanguard Target Retirement 2055 (Inv) | 18 bps | 8 bps | 125% |
| Vanguard Target Retirement 2060 (Inv) | 18 bps | 8 bps | 125% |
| Vanguard Target Retirement Income (Inv) | 16 bps | 8 bps | 100% |

43.    Ten of the 12 The Vanguard lower-cost collective trust funds have been available since 2007. However, despite the availability of far lower-cost collective trust target date funds from the exact same investment manager Vanguard, the Pioneer Defendants continue to offer the higher-cost Investor class mutual funds to Plan participants.

44.    Had the amounts invested in the higher-cost target date mutual funds instead been invested in the lower-cost collective trust target date funds, Plan participants would not have lost hundreds of thousands of dollars in their retirement savings by paying higher fees.

45.    The Pioneer Defendants had no annual review or other process in place to fulfill their continuing obligation to monitor and control Plan investment options, or, in the alternative, failed to follow their own processes.

**The Pioneer Defendants Caused the Plan to Pay Excessive Recordkeeping Fees.**

46.      29 U.S.C. §1106(a)(1)(C) of ERISA prohibits a fiduciary of an employee benefit plan from entering into an agreement with a party in interest for the provision of services to the Plan. 29 U.S.C. §1002(14)(B) defines a "party in interest" as "a person providing services to such plan." Vanguard, as the recordkeeper for the Plan, is a "party in interest" under 29 U.S.C. §1106(a)(1)(C).

47.      29 U.S.C. §1108(b)(2) exempts "Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan" from the 29 U.S.C. §1106(a)(1)(C) bar "if no more than reasonable compensation is paid therefor."

48.      Recordkeeping is a necessary service for every defined contribution plan. Recordkeeping services for a qualified retirement plan, like the Plan, are essentially fixed and largely automated. The cost of recordkeeping and administrative services depends on the number of participants, not the amount of assets in the participant's account.

49.      Recordkeeping for 401(k) plans like the Plan and its participants is fundamentally the same as keeping records for a brokerage account with a few additional points of data. It is a system where costs are driven purely by the number of inputs and the number of transactions. In essence, it is a computer-based bookkeeping system.

50.      The greatest cost incurred in incorporating a new retirement plan into a recordkeeper's system is for upfront setup costs. After the Plan account is set up, individual accounts are opened by entering the participant's name, age, SSN, date of hire and marital status. The system also records the amount of a participant's compensation he or she wishes to contribute each pay period through automated payroll deductions. Participants can go on line and

13

change their contribution rate at any time.

51.     There are numerous recordkeepers in the marketplace who are capable of providing a high level of service to the Plan, and who will readily respond to a request for proposal. These recordkeepers primarily differentiate themselves based on price, and vigorously compete for business by offering the best price.

52.     The cost of recordkeeping services depends on the number of participants, not on the amount of assets in the participant's account. Thus, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account.

53.     The Committee contracted with Vanguard to perform recordkeeping and other services. Vanguard is compensated as the recordkeeper in two ways.

54.     First, Vanguard is paid directly by the Plan. Per the Plan's Form 5500s filed with the United States Department of Labor,[8] Vanguard received the following direct compensation from the Plan between 2012 and 2015:

| Year | Direct Comp Paid | No. of Plan Participants | Cost per Plan Participant | Total Plan Assets |
|------|------------------|-------------------------|---------------------------|-------------------|
| 2012 | $141,924.00 | 3,939 | $36.03 | $355,855,632.00 |
| 2013 | $196,475.00 | 4,252 | $46.20 | $465,614,836.00 |
| 2014 | $248,309.00 | 4,612 | $53.83 | $510,958,254.00 |
| 2015 | $291,794.00 | 4,410 | $66.16 | $500,187,123.00 |

55.     Between 2012 and 2015, Plan participation increased 11.9% from 3,939 in 2012 to 4,410 and assets increased by 40.5% from $355,855,632 to $500,187,132. However, the Plan's direct compensation paid to Vanguard increased by 106% from $141,924 to $291,794.

---

[8] https://www.efast.dol.gov/portal/app/disseminate?execution=e1s1#

There is no reasonable basis for Vanguard's increased fees from $36.03 per participant to $66.16 per participant under these circumstances.

56.     Second, Vanguard received additional annual fees through revenue sharing from at least 10 mutual funds offered as past or present Plan choices.

57.     In a revenue sharing arrangement, a mutual fund or other investment vehicle directs a portion of the expense ratio—the asset-based fees it charges to investors—to the 401(k) plan's recordkeeper putatively for providing recordkeeping and administrative services for the mutual fund.

58.     Because revenue sharing arrangements provide asset-based fees, prudent fiduciaries monitor the total amount of revenue sharing a recordkeeper receives to ensure that the recordkeeper is not receiving unreasonable compensation. A prudent fiduciary ensures that the recordkeeper rebates to the plan all revenue sharing payments that exceed a reasonable, flat per participant recordkeeping fee that can be obtained from the recordkeeping market through competitive bids. Because revenue sharing payments are asset based, they bear no relation to a reasonable recordkeeping fee and can provide excessive compensation.

59.     The mutual funds paid Vanguard annual revenue sharing fees based on a percentage of the total Plan assets invested in the fund, which were ultimately paid by Plan participants who invest in those funds. For example, the Oppenheimer Developing Markets Fund charged .87% annually to Plan participants to invest in the fund. Oppenheimer then paid Vanguard .25% in marketing, distribution and other fees to be part of the Plan investment options. Had the Pioneer Defendants negotiated a rebate by Vanguard of those fees, Plan participants investing in the Oppenheimer funds would have earned .25% more per year on their investment.

60.     Based on the direct and indirect compensation levels shown on the Plan's Form 5500s filed with the Department of Labor between 2012 and 2015, the Plan paid much higher than a reasonable fee for Vanguard's services, resulting in the Plan paying hundreds of thousands of dollars in excessive recordkeeping fees each year.

61.     Had the Pioneer Defendants negotiated with Vanguard to cap the amount of revenue sharing or ensure that any excessive amounts were returned to the Plan, as other loyally and prudently administered plans do, the Plan participants would have benefitted from lower administrative costs and fees. However, the Pioneer Defendants failed to do so.

62.     To ensure that plan administrative and recordkeeping expenses are and remain reasonable for the services provided, prudent fiduciaries of large defined contribution plans put the plan's recordkeeping and administrative services out for competitive bidding at regular intervals of approximately three years, and monitor recordkeeping costs regularly within that period.

63.     A competitive bidding process for the Plan's recordkeeping services would have produced a reasonable recordkeeping fee for the Plan. This competitive bidding process would have enabled the Pioneer Defendants to select a recordkeeper charging reasonable fees, to negotiate a reduction in recordkeeping fees, and to rebate any excess expenses paid by participants for recordkeeping services.

64.     Upon knowledge and belief, the Pioneer Defendants failed to seek competing bids for recordkeeping and administrative services to determine whether Vanguard's fees were reasonable or whether other, lower cost options were available.

65.     The Pioneer Defendants had no annual review or other process in place to fulfill their continuing obligation to monitor and control Plan fees and expenses, or, in the alternative,

failed to follow their own processes.

66.    The Pioneer defendants breached their fiduciary duty to the Plan by paying Vanguard unreasonable fees for recordkeeping for the Plan.

67.    The Pioneer Defendants breached their fiduciary duty to the Plan by failing to review and control the recordkeeping and administrative fees paid to Vanguard.

**The Pioneer Defendants Imprudently Retained the Vanguard Money Market Fund**

68.    Stable value funds are a common investment in large defined contribution plans and are designed specifically for use in such plans. Stable value funds are portfolios of assets which are conservatively managed to preserve principal and provide a stable credit rate of interest. And "[b]ecause they hold longer-duration instruments, [stable value funds] generally outperform money market funds, which invest exclusively in short-term securities." *Abbott v. Lockheed Martin Corp*., 725 F.3d 803, 806 (7th Cir. 2013).

69.    Stable value funds provide a guaranteed rate of return to the investor, referred to as a crediting rate, and protect against the loss of principal and accrued interest. This protection is provided through a "wrap" contract issued by a bank, insurance company or other financial institution that assures (1) payment of a set interest rate for a specified period of time; and (2) participant-initiated withdrawals and transfers will occur at book value subject to the terms of the contract.

70.    Vanguard offers the Vanguard Retirement Trust stable value funds as a Plan investment option. The Vanguard Retirement Trust fund has four classes: I, III, IV and V. The sole difference between the classes is the expense ratio.

71.    Prior to May 2014, the Plan offered Vanguard Retirement Trust V, which had an expense ratio of .48%, as an investment option. After May 2014, the Plan offered Vanguard

Retirement Trust III, which has an expense ratio of .38%. The Vanguard Retirement Trust funds averaged returns of 2% per year over five years.

72.     The Fund also offered the Vanguard Federal Money Market Fund as an investment option. Over the same five year period the Vanguard Federal Money Market Fund averaged returns of .12% per year. Upon knowledge and belief, the Vanguard  Federal Money Market Fund was designated as the default cash investment for Plan participants by the Committee and the Individual Defendants.

73.     Both the Vanguard Retirement Trust V and the Vanguard Federal Money Market Fund are presented by the Plan as "Short-Term Reserves." There are no material additional risks, conditions, or restrictions on investments or withdrawals for the Vanguard Retirement Trust V as compared to the Vanguard Federal Money Market Fund.

74.     Offering both the Vanguard Retirement Trust V and the Vanguard Federal Money Market funds as Short-Term Reserve investment options in the Plan provided no benefit to the Plan participants, but instead confused and misled the Plan participants by leading them to believe there was a material difference in the funds. As a result, many Plan participants who were eligible to invest in the Vanguard Retirement Trust stable value fund instead invested in the Vanguard Federal Money Market fund, which cost them an annual investment return of almost 2%.

75.      The following table compares the investment in the Vanguard Retirement Trust III/V stable value funds with the investment in the Vanguard Prime Money Market Fund.

| Year | Investment in Vanguard Retirement Trust III/V | Investment in Vanguard Prime Money Market Fund |
|------|-----------------------------------------------|-----------------------------------------------|
| 2012 | $21,909,217.00 | $16,213,732.00 |

| 2013 | $ 21,842,920.00 | $19,597,752.00 |
| 2014 | $24,389,254.00 | $16,534,704.00 |
| 2015 | $24,124,321.00 | $22,506,351.00 |

76.    Had the Plan participants invested in the $74,852,539 in the Vanguard Retirement Trust III/V rather than the Vanguard Prime Money Market Fund, they would have realized over $1,500,000 in additional earnings on their investment.

77.    In 2017, the Pioneer Defendants removed the Vanguard Federal Money Market fund as a Plan investment option and did not replace it with another money market fund or other Short-Term Reserve option. As a result, the sole short term reserve option currently available under the Plan is the Vanguard Retirement Trust III stable value fund.

78.    The Pioneer Defendants' obligations as Plan fiduciaries included the continuing duty to monitor investments and remove imprudent ones. *Tibble,* 135 S. Ct. at 1829. A prudent fiduciary would have evaluated and removed the Vanguard Prime Money Market Fund from the Plan investment options in 2012. The Pioneer Defendants breached that duty by failing to review and remove the underperforming Vanguard Federal Money Market Fund prior to 2017.

79.    The Pioneer Defendants had no annual review or other process in place to fulfill their continuing obligation to monitor and control fund performance, or, in the alternative,  failed to follow their own processes.

80.    As a result of the Pioneer Defendants' failure to remove the Vanguard Federal Money Market Fund, the Plan participants lost over $1.5 million in investment returns.

### ERISA'S Fiduciary Standards

81.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the Pioneer Defendants as Plan fiduciaries. 29 U.S.C. §1104(a), states, in relevant part, that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(A) for the exclusive purpose of

(i)    providing benefits to participants and their beneficiaries; and

(ii)    defraying reasonable expenses of administering the plan; [and]

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

82.    Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in the plan.

83.    ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. 29 U.S.C. §1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. The statute states, in relevant part,

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary,

20

knowing such act or omission is a breach; or

(2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

84.    29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109. Section 1109(a) provides in relevant part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

**CLASS ACTION ALLEGATIONS**

85.    29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a). Plaintiff Barrett has standing to bring these ERISA claims because there is a causal connection between the Pioneer Defendants' actions and actual harm to an ERISA Plan in which Barrett participates. "A plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592-593 (8th Cir. 2009); *see also DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008) (§ 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries).

86.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2), Plaintiff Barrett seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representatives of, the following classes:

**(1) Administrative Fee Class and Investment Management Fee Class**

All participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan from July 1, 2011 through the date of judgment, excluding the Defendants.

**(2) Money Market Fund Class**

All participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan who, from July 1, 2011 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund.

87.    This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a.    Each Class includes as many as 4,410 or more members and is so large that joinder of all members is impracticable.

b.    There are questions of law and fact common to these Classes because the Pioneer Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the

losses to the Plan resulting from each breach of fiduciary duty; and what

Plan-wide equitable and other relief the court should impose in light of the

Pioneer Defendants' breach of duty.

c.  Plaintiff Barrett's claims are typical of the claims of the Administrative Fee

Class and Investment Management Fee Class because Plaintiff Barrett was a

Plan participant during the time period at issue in this action and all

participants in the Plan were harmed by the Pioneer Defendants' misconduct.

Plaintiff Barrett has claims that are typical of the claims in the Money Market

Fund Class because all participants invested in the Vanguard Money Market

Fund were harmed by the Pioneer Defendants' misconduct.

d.  Plaintiff Barrett will adequately represent the Classes because he was a

participant in the Plan and invested in the Vanguard Money Market Fund

during the Class period, has no interest that is in conflict with the Classes, is

committed to the vigorous representation of the Classes, and has engaged

experienced and competent attorneys to represent the Classes.

e.  Prosecution of separate actions for these breaches of fiduciary duties by

individual participants and beneficiaries would create the risk of (A)

inconsistent or varying adjudications that would establish incompatible

standards of conduct for the Pioneer Defendants with respect to the discharge

of their fiduciary duties to the Plan and personal liability to the Plan under 29

U.S.C. §1109(a), and (B) adjudications by individual participants and

beneficiaries regarding these breaches of fiduciary duties and remedies for the

Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

88.     A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

89.     Plaintiff's counsel, Franklin D. Azar & Associates, will fairly and adequately represent the interests of the Classes and is best able to represent the interests of the Classes under Rule 23(g).

### FIRST CLAIM FOR RELIEF

**Breach of Duties of Loyalty and Prudence—Unreasonable Investment Management Fees
Against the Committee and the Individual Defendants**

90.     Plaintiff incorporates the prior allegations of the Complaint.

91.     The scope of the fiduciary duties and responsibilities of the Committee and the Individual Defendants includes managing the assets of the Plan for the sole and exclusive benefit

of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA. The Committee and Individual Defendants are directly responsible for ensuring that the Plan's fees are reasonable, selecting prudent investment options, evaluating and monitoring the Plan's investments on an ongoing basis and eliminating imprudent ones, and taking all necessary steps to ensure that the Plan's assets were invested prudently. ERISA's "duty of prudence involves a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble*, 135 S. Ct. at 1829.

92.     The Committee and the Individual Defendants selected and retained as Plan investment options mutual funds with excessively high fees relative to far less expensive investment options, including lower-cost share class mutual funds with the identical investment manager and investments, and collective trusts that were readily available to this large Plan at all relevant times.

93.     In so doing, the Committee and the Individual Defendants failed to make Plan investment decisions based solely on the merits of the investment funds and the interest of participants. The Committee and the Individual Defendants breached their fiduciary duty of loyalty under 29 U.S.C. §1104(a)(1)(A) by failing to act solely in the interest of the Plan participants and beneficiaries to defray reasonable expenses of administering the Plan.

94.     The Pioneer Defendants failed to implement or follow any rational process for reviewing and evaluating the investment options offered to Plan participants, including reviewing whether appropriate mutual fund share classes were being offered or whether less expensive alternatives were available.

95.     The Committee and the Individual Defendants also failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then

prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims. The Committee and the Individual Defendants therefore breached their fiduciary duty of prudence under 29 U.S.C. §1104(a)(1)(B).

96.     Each Individual Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate. Total Plan losses will be determined at trial after complete discovery in this case and are illustrated herein based upon the limited information that has been made available to Plan participants to date.

97.     Each Pioneer Defendant also knowingly participated in each of the other Pioneer Defendants' breaches, knowing that such acts were a breach, enabled the other Pioneer Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Pioneer Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Pioneer Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

## SECOND CLAIM FOR RELIEF

### Breach of Duties of Loyalty and Prudence—Unreasonable Administrative Fees Against the Committee and the Individual Defendants

98.     Plaintiff incorporates the prior allegations of the Complaint.

99.     The scope of the fiduciary duties and responsibilities of the Committee and the Individual Defendants includes defraying reasonable expenses of administering the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, and acting with the care, skill, diligence, and prudence required by ERISA.

100.    If a defined contribution plan overpays for recordkeeping services due to the

fiduciaries' "failure to solicit bids" from other recordkeepers, the fiduciaries have breached their duty of prudence. See *George v. Kraft Foods Global, Inc*., 641 F.3d 786, 798–99 (7th Cir. 2011). Similarly, "us[ing] revenue sharing to benefit [the plan sponsor and recordkeeper] at the Plan's expense" while "failing to monitor and control recordkeeping fees" and "paying excessive revenue sharing" is a breach of fiduciary duties. *Tussey v. ABB, Inc.,* 746 F.3d 327, 336 (8th Cir. 2014).

101.    The Committee and the Individual Defendants breached their fiduciary duties to the Plan by (1) failing to calculate and control the amount the Plan was paying Vanguard for recordkeeping through revenue sharing; (2) failing to determine whether Vanguard's asset-based pricing was competitive; (3) failing to solicit competitive bids from vendors on a flat per participant fee; and (4) failing to adequately leverage the Plan's size to reduce fees.

102.    The Pioneer Defendants failed to implement or follow any rational process for reviewing and monitoring the expenses of administering the Plan, including soliciting competing bids, evaluating whether the fees were reasonable, and determining why the fees more than doubled over four years.

103.    Each Individual Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate. Total Plan losses will be determined at trial after complete discovery in this case and are illustrated herein based upon the limited information that has been made available to Plan participants to date.

104.    Each Pioneer Defendant also knowingly participated in each of the other Pioneer Defendants' breaches, knowing that such acts were a breach, enabled the other Pioneer Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of

the breach by the other Pioneer Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Pioneer Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

### THIRD CLAIM FOR RELIEF

**Breach of Duties of Loyalty and Prudence— Failure to Remove the Money Market Fund Against the Committee and the Individual Defendants**

105.    Plaintiff incorporates the prior allegations of the Complaint.

106.    The scope of the fiduciary duties and responsibilities of the Committee and the Individual Defendants includes direct responsibility for evaluating and monitoring the Plan's investments on an ongoing basis and eliminating imprudent ones, and ensuring that the Plan offers prudent investment options that will provide meaningful financial benefits to participants.

107.    The Committee and the Individual Defendants maintained the Vanguard Prime Money Market Fund as a Plan investment option and default cash investment fund. This fund, which holds very short-term, minimally yielding instruments, was expected to generate and generated only microscopic returns for consecutive years that did not even come close to keeping pace with inflation. As a result, this investment option did not provide any meaningful retirement benefits to participants, and, in fact, participants in the money market fund fell farther behind inflation each year in the fund.

108.    Prudent fiduciaries of defined contribution plans know that such minimally returning funds will not and have not kept pace with inflation. However, the Committee and the Individual Defendants failed to make a reasoned decision to eliminate the Vanguard Prime Money Market Fund even though the Plan offered the higher yielding Vanguard Retirement Trust stable value fund, which had virtually identical properties and risks to the money market fund, as an alternative investment.

109.    As a result of being offered two alternatives with confusing titles in the same category, and because the Vanguard Prime Money Market Fund was the default cash investment, a substantial number of Plan participants invested in the lower yield money market fund until the money market fund was eliminated as a Plan investment option in 2017. Had the Committee and the Individual Defendants timely acted to remove the money market fund as an investment option under the Plan, Plan members would not have suffered losses compared to what they would have earned in the stable value fund.

110.    The Pioneer Defendants failed to implement or follow any rational process for reviewing and monitoring the performance of the Vanguard Money market Fund, whether it was prudent or necessary to continue offer the money market fund, and whether offering the money market fund created unnecessary confusion for the Plan participants.

111.    Each Individual Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate. Total Plan losses will be determined at trial after complete discovery in this case and are illustrated herein based upon the limited information that has been made available to Plan participants to date.

112.    Each Pioneer Defendant also knowingly participated in each of the other Pioneer Defendants' breaches, knowing that such acts were a breach, enabled the other Pioneer Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Pioneer Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Pioneer Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

**FOURTH CLAIM FOR RELIEF**

**Failure to Monitor Fiduciaries Against Pioneer USA**

113.    Plaintiff incorporates the prior allegations of the Complaint.

114.    Pioneer USA is responsible for the appointment and removal of the Committee to serve as Plan Administrator, with sole responsibility for the administration of the Plan.

115.    Because Pioneer USA had explicit fiduciary responsibility to appoint and remove the Committee members, Pioneer USA had a fiduciary responsibility to monitor the performance of the other fiduciaries, including the Committee.

116.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not doing so.

117.    To the extent any of Pioneer USA's fiduciary responsibilities were delegated to another fiduciary, Pioneer USA's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

118.    Pioneer USA breached its fiduciary monitoring duties by, among other things:

a.    failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan;

b.    failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the excessive administrative and investment management fees and consistent underperforming Plan investments in violation of ERISA;

c.  failing to ensure that the monitored fiduciaries had a prudent process in
place for evaluating the Plan's administrative fees and ensuring that the
fees were competitive, including a process to identify and determine the
amount of all sources of compensation to the Plan's recordkeeper and the
amount of any revenue sharing payments, a process to prevent the
recordkeeper from receiving revenue sharing that would increase the
recordkeeper's compensation to unreasonable levels even though the
services provided remained the same, and a process to periodically obtain
competitive bids to determine the market rate for the services provided to
the Plan;

d.  failing to ensure that the monitored fiduciaries considered the ready
availability of comparable investment options to such a large plan,
including lower-cost share classes of the identical mutual funds, and lower
cost collective trusts, that charged far lower fees than the Plan's mutual
fund options; and

e.  failing to remove appointees whose performance was inadequate in that
they continued to maintain imprudent, excessive-cost investments, and an
option that did not even keep up with inflation, all to the detriment of Plan
participants' retirement savings.

119.    Pioneer USA failed to implement or follow any rational process for monitoring
the performance of the Committee and the Individual Defendants or determining whether the
Committee and the Individual Defendants were fulfilling their fiduciary duties.

120.    As a consequence of Pioneer USA's breaches of its fiduciary duty to monitor, the

Plan suffered substantial losses. Had Pioneer USA discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been avoided. Therefore, as a direct result of the breaches of fiduciary duty alleged herein, the Plan, and the Plaintiff and the other Class members, lost millions of dollars in their retirement savings.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests the Court:

- certify the Classes, appoint Plaintiffs as class representatives, and appoint Franklin D. Azar & Associates as Class Counsel;

- find and declare that the Pioneer Defendants have breached their fiduciary duties as described above;

- find and adjudge that Pioneer Defendants are liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

- order Defendants to provide an accounting necessary to determine the amounts Defendants must make good the Plan under §1109(a);

- award to the Plaintiffs and the Classes their attorney's fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

- order the payment of interest to the extent it is allowed by law; and

- grant other equitable or remedial relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIALBLE**

Dated this 28th  day of June, 2017

Franklin D. Azar & Associates, P.C.


By:    /s/ Paul R. Wood
       Franklin D. Azar
       H. Zachary Balkin
       Paul R. Wood
       14426 East Evans Avenue
       Aurora, CO 80014
       Telephone: (303) 757-3300
       Facsimile: (303) 757-3206
       azarf@fdazar.com
       balkinz@fdazar.com
       woodp@fdazar.com