IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: Civil Action No.: 1:17-cv-01579-WJM-NYW

WILLIAM M. BARRETT, Individually and as the representative of a class consisting of the participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan,

        Plaintiff,

v.

PIONEER NATURAL RESOURCES USA, INC.; THE PIONEER NATURAL RESOURCES USA INC. 401(K) AND MATCHING PLAN COMMITTEE; THERESA A. FAIRBROOK; TODD C. ABBOTT; W. PAUL MCDONALD; MARGARET M. MONTEMAYOR; THOMAS J. MURPHY; CHRISTOPHER M. PAULSEN; KERRY D. SCOTT; SUSAN A. SPRATLEN; LARRY N. PAULSEN; MARK KLEINMAN; and RICHARD P. DEALY

        Defendants.

_____

## FIRST AMENDED COMPLAINT
_____

    Plaintiff William M. Barrett, individually and as representative of participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(k) and Matching Plan (the "Plan"), submits his First Amended Complaint on behalf of the Plan against the Plan sponsor, Defendant Pioneer Natural Resources USA, Inc. ("Pioneer USA"), the Plan Administrator, Pioneer Natural Resources USA Inc. 401(k) and Matching Plan Committee (the "Committee") and the past and present  members of the Pioneer Natural Resources USA Inc. 401(k) and Matching Plan Committee (collectively the "Pioneer Defendants") for breaching their ERISA fiduciary duties in the management, operation and administration of the Plan.

### INTRODUCTION

    1.    Plaintiff William Barrett was a participant in the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan from 2011 until September 2017.

    2.    A 401(k) plan is an employer-sponsored defined contribution retirement plan that

enables employees to make tax-deferred contributions from their salaries to the plan. Employers also may make contributions into employee accounts. Typically, plan participants direct the investment of their accounts, choosing from the lineup of options offered in the plan.

3.     In a defined contribution plan, participants' retirement benefits are limited to the value of their own individual accounts, which is determined solely by employee and employer contributions plus the amount gained through investment in the options made available in the plan less expenses. *See* 29 U.S.C. §1002(34).

4.     Because retirement savings in defined contribution plans grow and compound over the course of the employee participants' careers, poor investment performance and excessive fees can dramatically reduce the amount of benefits available when the participant is ready to retire. Over time, even small differences in fees and performance compound and can result in vast differences in the amount of savings available at retirement. As the Supreme Court has explained, "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015).

5.     The impact of excessive fees on employees' and retirees' retirement assets is dramatic. The U.S. Department of Labor has noted that a 1% higher level of fees over a 35-year period makes a 28% difference in retirement assets at the end of a participant's career. U.S. Dep't of Labor, A Look at 401(k) Plan Fees, at 1–2 (Aug. 2013).[1]

6.     The marketplace for retirement plan services is established and competitive. On October 23, 2017 the Plan had $665,746,623 in assets, which makes it one of the top 0.4%

---

[1] Available at https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/401kFeesEmployee.pdf

(based on assets) of over 800,000 401(k) plans offered to participants[2]. As a result, the Plan has tremendous bargaining power to demand low-cost administrative and investment management services and well-performing, low cost investment funds.

7.     However, instead of leveraging the Plan's bargaining power to benefit participants and beneficiaries, the Pioneer Defendants chose inappropriate, higher cost mutual fund share classes and caused the Plan to pay unreasonable and excessive fees for recordkeeping and other administrative services.

8.     ERISA imposes strict fiduciary duties of prudence and loyalty on covered retirement plan fiduciaries. An ERISA fiduciary must discharge his responsibility "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1). These duties require fiduciaries to act "solely in the interest of [plan] participants and beneficiaries." *Id*. These duties include a continuing duty to monitor investments and remove imprudent ones. *Tibble*, 135 S. Ct. at 1829.

9.     Pioneer USA, as the Plan Sponsor, and the Committee as the Plan Administrator breached their fiduciary duties of prudence and loyalty and mismanaged the Plan by:

a.    Allowing Vanguard to be paid for recordkeeping services by offering retail class shares of Vanguard funds instead of available lower cost Admiral or Institutional shares, which resulted in Plan participants paying excessive costs to invest in the funds;

b.    Paying excessive recordkeeping fees to the Plan's recordkeeper, Vanguard Group, Inc. by failing to limit Vanguard's asset-based fees  or accept the per-participant fee offered by Vanguard;

---

[2] http://www.plansponsor.com/2017-Recordkeeping-Survey/

c. Failing to remove the poorly performing money market fund when the stable value fund, which offered higher returns and the same risk level was available, causing losses to Plan participants who invested in the money market fund rather than the stable value fund,; and

d. Failing to properly disclose Plan administrative expenses to Plan participants as required under 29 C.F.R. § 404a-5.

10. Plaintiff, individually and as the representative of a class consisting of the Plan's participants and beneficiaries, brings this action on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and (3) to enforce the Pioneer Defendants' liability under 29 U.S. C. § 1109(a), to make good to the Plan all losses resulting from their breaches of fiduciary duties, and to restore to the Plan any lost profits. In addition, Plaintiff seeks to compel the Plan to comply with ERISA Rule 404a-5, reform the Plan to prevent future breaches of fiduciary duties, and grant other equitable relief as the Court may deem appropriate.

## PARTIES

### The Plan

11. The Pioneer Natural Resources USA, Inc. 401(k) and Matching Plan is established and maintained by a written plan document as required by 29 U.S. C. §1102(a)(1).

12. The Plan is an "employee pension benefit plan" under 29 U.S.C. §1002(2)(A), and an "individual account plan" or "defined contribution plan" under 29 U.S.C. §1002(34). Employees who are eligible to participate in the Plan contribute to their individual accounts through payroll deductions.

13. As of October 23, 2017 the Plan had 4,504 participants and $665,746,623 in assets.

4

**Defendants**

14.     Pioneer Natural Resources USA, Inc. is a wholly owned subsidiary of Pioneer natural resources, Inc. a large, independent publicly traded (NYSE: PXD) oil and gas exploration and production company incorporated in Delaware and headquartered in Irving, Texas. Pioneer does business in Colorado, where it is the largest oil and gas operator in the Raton Basin in southeastern Colorado with approximately 198,000 gross acres and 2,300 wells.

15.     Pioneer USA is the Plan Sponsor as defined under 29 U.S.C § 1002(16)(B). Pioneer is a fiduciary to the Plan under 29 U.S.C. §1002(21)(A)(i) and (iii) because upon information and belief, the Pioneer USA Board of Directors has the sole authority to appoint and remove members of the Pioneer Natural Resources USA Inc. 401(k) and Matching Plan Committee, amend or terminate, in whole or part, the Plan or the Trust, and is designated as a fiduciary under the Plan.

16.     The Pioneer Natural Resources USA Inc. 401(k) and Matching Plan Committee is the Plan Administrator under 29 U.S.C § 1002(16)(A)(i). Upon knowledge and belief, the Committee is a fiduciary to the Plan under 29 U.S.C. §1002(21)(A)(i) and (iii) because the Committee has responsibility and discretionary authority to control the operation, management and administration of the Plan, with all powers necessary to enable it to properly carry out such responsibilities, including the selection and compensation of the providers of administrative services to the Plan and the selection, monitoring, and removal of the investment options made available to participants for the investment of their contributions and provision of their retirement income.

17.     Defendants Theresa A. Fairbrook, Todd C. Abbott, W. Paul McDonald, Margaret M.

Montemayor, Thomas J. Murphy, Christopher M. Paulsen, Kerry D. Scott, Susan A. Spratlen, Larry

N. Paulsen, Mark Kleinman and Richard P. Dealy (the Individual Defendants") are current or former

members of the Pioneer Natural Resources USA Inc. 401(k) and Matching Plan Committee. The

Individual Defendants are fiduciaries to the Plan under 29 U.S.C. §1002(21)(A)(i) and (iii) because

as members of the Committee they had responsibility and discretionary authority to control the

operation, management and administration of the Plan.

18.     Pioneer, the Committee and the Individual Defendants are collectively referred to

as the "Pioneer Defendants."

**Plaintiff**

19.     Plaintiff William Barret is a resident of Trinidad, Colorado. Mr. Barrett was

employed by Pioneer in Trinidad Colorado as a Fleet Coordinator. Mr. Barrett was a participant

in the Plan under 29 U.S.C. § 1002(7) from 2011 until September 2017 because he and his

beneficiaries were eligible to receive benefits under the Plan.

**JURISDICTION AND VENUE**

20.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331

because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts

have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

21.     This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and

28 U.S.C. §1391(b), because Pioneer USA is authorized to do business in Colorado and can be

found in this District, and the alleged breaches of the duties imposed by ERISA occurred in this

District.

22.     The Court has specific personal jurisdiction over all Pioneer Defendants because

they provided services for the Plan in this district and/or they engaged in the conduct described

herein which took place in and/or was specifically directed towards Plan participants in this District.

## FACTUAL ALLEGATIONS

**A.    The Pioneer Defendants Caused the Plan Participants to Pay Excessive Recordkeeping Fees**

23.    The Pioneer Defendants chose Vanguard Group Inc. ("Vanguard") to serve as the Plan recordkeeper and investment platform. Vanguard is one of the largest investment companies in the world. Vanguard is the recordkeeper for 6,853 plans with 4,186,546 participants and $392 billion in assets.[3]

24.    Recordkeeping is a necessary service for every defined contribution plan. Recordkeeping services for a qualified retirement plan, like the Plan, are essentially fixed and largely automated. The cost of recordkeeping and administrative services depends on the number of participants, not the amount of assets in the participant's account.

25.    Recordkeeping for 401(k) plans like the Plan and its participants is fundamentally the same as keeping records for a brokerage account with a few additional points of data. It is a system where costs are driven purely by the number of inputs and the number of transactions. In essence, it is a computer-based bookkeeping system.

26.    The greatest cost incurred in incorporating a new retirement plan into a recordkeeper's system is for upfront setup costs. After the Plan account is set up, individual accounts are opened by entering the participant's name, age, SSN, date of hire and marital status. The system also records the amount of a participant's compensation he or she wishes to contribute each pay period through automated payroll deductions. Participants can go on line and change their contribution rate at any time.

---

[3] http://www.plansponsor.com/2016-Recordkeeping-Survey/?pid=57&pname=Vanguard

27.     The cost of recordkeeping services depends on the number of participants, not on the amount of assets in the participant's account. Thus, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account.

28.     ERISA, through 29 U.S.C. §1106(a)(1)(C) and 29 U.S.C. §1108(b)(2), requires the Plan to pay "no more than reasonable compensation" for recordkeeping services to a "party in interest" such as Vanguard.

**(i)     The Plan Paid Unreasonable Recordkeeping Fees to Vanguard**

29.     The Pioneer Defendants chose to pay Vanguard asset-based recordkeeping fees. Those fees were paid in two ways:

a.  Vanguard received revenue sharing from at least 10 non-Vanguard mutual funds offered as past or present Plan choices.

b.  Vanguard received the difference between the higher operating cost Investor class shares of Vanguard mutual funds offered by the Plan and the lower operating cost Admiral or Institutional class shares of the same funds.

30.     A single mutual fund with one portfolio and one investment adviser may offer more than one "class" of its shares to investors. Each class represents a similar interest in the mutual fund's portfolio. The principal difference between the classes is that the mutual fund will charge different fees and expenses depending on the class chosen.

31.     For example, an Investor class share in a mutual fund may charge an annual expense ratio of 1%, while the institutional class share in that same fund with the same advisors and the same investments charges an annual expense ratio of 0.50%. Thus, an investor who purchases an institutional class share will realize a 0.50% greater annual return on his/her

investment compared to an investor who owns an Investor class share.

32.     In a revenue sharing arrangement, a mutual fund or other investment vehicle directs a portion of the expense ratio—the asset-based fees it charges to investors—to the 401(k) plan's recordkeeper putatively for providing recordkeeping and administrative services for the mutual fund. These revenue sharing fees increase the operating costs of the mutual fund, which are paid by the Plan participants who invest in those funds.

33.     Because revenue sharing payments are asset based, they bear no relation to a reasonable recordkeeping fee and can provide excessive compensation. Prudent fiduciaries monitor the total amount of revenue sharing a recordkeeper receives to ensure that the recordkeeper is not receiving unreasonable compensation. A prudent fiduciary ensures that the recordkeeper rebates to the plan all revenue sharing payments that exceed a reasonable per participant recordkeeping fee that can be obtained from the recordkeeping market through competitive bids.

34.     Between 2012 and 2015, Vanguard received revenue sharing payments from a number of third-party funds offered by the Plan. The following chart shows the revenue sharing payments to Vanguard from those funds (expressed as an annual percentage of the assets invested in the funds) and the excess cost to Plan participants invested in the funds:

| Fund | Operating Cost | Revenue Share To Vanguard | Excess Cost To Investors Based on Available Lower Cost Share Class |
|------|----------------|---------------------------|-------------------------------------------------------------------|
| Sentinel Small Company Fund | 1.10% | 0.25% | 0.42% |
| American Funds EuroPacific Growth Fund | 0.85% | 0.35% | 0.30% |

| | | | |
|---|---|---|---|
| Templeton Global Bond Fund | 0.90% | 0.40% | 0.40% |
| PIMCO Total Return Fund | 0.71% | 0.25% | 0.25% |
| JPMorgan Small Cap Equity Fund | 1.16% | 0.25% | 0.19% |
| Royce Premier Fund | 1.34% | 0.35% | 0.25% |
| Artisan Mid Cap Fund | 1.20% | 0.35% | 0.19% |
| Columbia Acorn International Fund | 0.98% | 0.25% | 0 |
| Invesco Real Estate Fund | 0.86% | 0.10% | 0 |
| Loomis Sayles Bond Fund | 0.63% | 0.05% | 0 |
| Oppenheimer Developing Markets Fund | 1.03% | 0.25% | 0.25% |
| Prudential Jennison Natural Resources Fund | 1.19% | 0.40% | 0.25% |
| Royce Total Return Fund | 1.03% | 0 | 0 |
| Eagle Small Cap Growth Fund | 0.80% | 0.20% | 0.78% |
| Sarofim Equity Trust Fund | 0.50% | 0.20% | 0 |
| T. Rowe Price Mid-cap Growth | 0.80% | 0.10% | 0.15% |

35.     Between 2012 and 2017 the Plan offered 23 Vanguard funds as investment options.

36.     The Pioneer Defendants elected to pay for Vanguard's recordkeeping services by

offering retail Investor share classes of Vanguard funds rather than lower priced Admiral or Institutional class shares. Vanguard kept the difference between the operating costs of the higher cost Investor class shares and the lower cost Admiral shares.

37.     As a result of this arrangement, Vanguard was paid an asset-based fee for recordkeeping that was calculated based on the amount of assets invested in Vanguard funds multiplied by the difference in the cost of the share classes of the funds.

38.     The following chart illustrates the differences in the fund expenses between the Investor shares chosen by the Pioneer Defendants and the Institutional/Admiral shares that should have been offered.

| Fund | Investor share class fees | Institutional/ Admiral Share Class Fees | Excess Cost To Investors |
|---|---|---|---|
| Vanguard PRIMECAP Fund | 0.45% | 0.36% | 0.09% |
| Vanguard 500 Index Fund | 0.17% | 0.04% | 0.13% |
| Vanguard Windsor II Fund | 0.35% | 0.27% | 0.09% |
| Vanguard Total Bond Market Index Fund (Prior to June 2014) | 0.22% | 0.07% | 0.15% |
| Vanguard Prime Money Market Fund | 0.16% | 0.08% | 0.08% |
| Vanguard Retirement Savings Trust V (Prior to June 2014) | 0.48% | 0.38% | 0.10% |
| Vanguard Intermediate-Term Treasury Fund | 0.20% | 0.10% | 0.10% |
| Vanguard Wellington Fund | 0.27% | 0.17% | 0.10% |

| | | | |
|---|---|---|---|
| Vanguard Total International Stock Index Fund | 0.22% | 0.12% | 0.10% |
| Vanguard Total Stock Market Index Fund | 0.18% | 0.04% | 0.14% |
| Vanguard Inflation-Protected Securities Fund (Prior to June 2014) | 0.20% | 0.07% | 0.13% |
| Vanguard Extended Market Index Fund (Prior to June 2014) | 0.28% | 0.12% | 0.14% |
| Vanguard Target Retirement 2010 | 0.16% | 0.13% | 0.03% |
| Vanguard Target Retirement 2015 | 0.16% | 0.13% | 0.03% |
| Vanguard Target Retirement 2020 | 0.16% | 0.13% | 0.03% |
| Vanguard Target Retirement 2025 | 0.17% | 0.13% | 0.03% |
| Vanguard Target Retirement 2030 | 0.17% | 0.13% | 0.03% |
| Vanguard Target Retirement 2035 | 0.18% | 0.13% | 0.03% |
| Vanguard Target Retirement 2040 | 0.18% | 0.13% | 0.03% |
| Vanguard Target Retirement 2045 | 0.18% | 0.13% | 0.03% |
| Vanguard Target Retirement 2050 | 0.18% | 0.13% | 0.03% |
| Vanguard Target Retirement 2055 | 0.18% | 0.13% | 0.03% |
| Vanguard Target Retirement 2060 | 0.18% | 0.13% | 0.03% |

| | | | |
|---|---|---|---|
| Vanguard Target Retirement Income | 0.16% | 0.13% | 0.03% |

39.     Although the percentages appear small, the extra fees cost the Plan participants hundreds of thousands of dollars per year. For example, in 2015 alone the Plan participants paid excess fees totaling $53,251 because they invested in the Vanguard 500 Index Fund Investor share class rather than the Admiral share class.

40.     From 2011 through 2016, the Plan paid Vanguard the following recordkeeping fees:

| Year | Amount of Fees | Number of Plan participants | Cost Per Participant |
|---|---|---|---|
| 12/31/2011 | $366,922.00 | 2,705 | $135.00 |
| 12/31/2012 | $397,031.00 | 3,891 | $102.00 |
| 12/31/2013 | $385,914.00 | 4,204 | $92.00 |
| 12/31/2014 | $380,446.00 | 4,582 | $83.00 |
| 11/30/2015 | $319,432.00 | 4,392 | $73.00 |
| 12/31/2016 | $303,865.00 | 4,313 | $70.00 |

41.     A survey by NEPC, an independent investment consulting firm, found that the median recordkeeping cost of 113 plans was $64 per plan participant in 2015.[4]

42.     The Plan paid much higher than a reasonable fee for Vanguard's services, which

---

[4] https://cdn2.hubspot.net/hubfs/2529352/Blog/2015_10_nepc_2015_defined_contribution_plan_and_fee_survey-_what_a_difference_a_decade_makes_copy1.pdf?t=1495567038751

caused the Plan to pay hundreds of thousands of dollars in excessive recordkeeping fees.

43.     In 2012, Vanguard provided the Committee with a proposal in which recordkeeping fees would be charged at a fixed rate of $53.19 per participant, while also offering Plan participants the lowest cost mutual fund share classes.

44.     The Pioneer Defendants rejected this proposal, and continued to pay recordkeeping fees based on a percentage of the total amounts invested in the Vanguard funds. As a result, the Plan paid recordkeeping fees of $102 per participant in 2012, almost double the Vanguard proposal.

45.     In 2013, Vanguard provided the Committee with a proposal in which recordkeeping fees would be charged at a fixed rate of $58.00 per participant, while also offering Plan participants the lowest cost mutual fund share classes.

46.     The Pioneer Defendants rejected this proposal, and continued to pay recordkeeping fees based on a percentage of the total amounts invested in the Vanguard funds. As a result, the Plan paid recordkeeping fees of $ 92 per participant in 2013, $85 per participant in 2014 and $73 per participant in 2015.

47.     By rejecting the Vanguard proposals for fixed recordkeeping fees and lower cost share classes, the Pioneer Defendants failed to fulfill their continuing obligation to monitor Plan investment choices for performance and minimize expenses.

48.     In November 2015, Vanguard provided the Committee with a proposal in which recordkeeping fees would be charged at a fixed rate of $74.00 per participant, while also offering Plan Participants the lowest cost mutual fund share class.

49.     The Pioneer Defendants rejected this proposal, and continued to pay recordkeeping fees based on a percentage of the total amounts invested in the Vanguard funds.

The recordkeeping costs decreased to $70 per participant in 2016, but were still higher than the median recordkeeping fee in the NEPC survey.

50.     Had the Pioneer Defendants negotiated with Vanguard to cap the amount of revenue sharing or ensure that any excessive amounts were returned to the Plan, as other loyally and prudently administered plans do, the Plan participants would have benefitted from lower administrative costs and fees.

51.     Despite having hundreds of millions of dollars in Plan assets, the Pioneer Defendants failed to negotiate a preferred rate for recordkeeping with Vanguard, and rejected Vanguard proposals that would have lowered Plan recordkeeping fees. In doing so, the Pioneer Defendants breached their fiduciary duty to the Plan.

**(ii)      The Committee Failed to Seek Competitive Bids for Recordkeeping**

52.     There are numerous recordkeepers in the marketplace who are capable of providing a high level of service to the Plan, and who will readily respond to a request for proposal. These recordkeepers primarily differentiate themselves based on price, and vigorously compete for business by offering the best price.

53.      To ensure that plan administrative and recordkeeping expenses are and remain reasonable for the services provided, prudent fiduciaries of large defined contribution plans put the plan's recordkeeping and administrative services out for competitive bidding at regular intervals of approximately three years, and monitor recordkeeping costs regularly within that period.

54.     A competitive bidding process for the Plan's recordkeeping services would have produced a reasonable recordkeeping fee for the Plan. This competitive bidding process would have enabled the Pioneer Defendants to select a recordkeeper charging reasonable fees, or to

negotiate a reduction in recordkeeping fees and a rebate of any excess expenses paid by Plan participants for recordkeeping services with Vanguard.

55.     The Pioneer Defendants last sought competitive bids for Plan recordkeeping services in September, 2008. In February, 2016, the Committee elected not to seek competitive bids for recordkeeping for the Plan.

56.     The failure by the Committee to seek competitive bids was a breach of their duty of prudence to the Plan, and caused the Plan to pay excessive recordkeeping fees.

**B.     The Pioneer Defendants Imprudently Kept the Vanguard Prime Money Market Fund as an Investment Option**

57.     The Pioneer Defendants' obligations as Plan fiduciaries included the continuing duty to monitor investments and remove imprudent ones. *Tibble,* 135 S. Ct. at 1829.

58.     Stable value funds are a common investment in large defined contribution plans and are designed specifically for use in such plans. Stable value funds are portfolios of assets that are conservatively managed to preserve principal and provide a stable credit rate of interest. And "[b]ecause they hold longer-duration instruments, [stable value funds] generally outperform money market funds, which invest exclusively in short-term securities." *Abbott v. Lockheed Martin Corp*., 725 F.3d 803, 806 (7th Cir. 2013).

59.     Stable value funds provide a guaranteed rate of return to the investor, referred to as a crediting rate, and protect against the loss of principal and accrued interest. This protection is provided through a "wrap" contract issued by a bank, insurance company or other financial institution that assures (1) payment of a set interest rate for a specified period of time; and (2) participant-initiated withdrawals and transfers will occur at book value subject to the terms of the contract.

60.     In times of low interest rates, stable value funds outperform money market funds.

Since 2008, stable value funds have outperformed money market funds by an average of 2.0% per year.

61.     Vanguard offers the Vanguard Retirement Trust stable value funds as a Plan investment option. The Vanguard Retirement Trust fund has four classes: I, III, IV and V. The sole difference between the classes is the expense ratio.

62.     Prior to May 2014, the Plan offered Vanguard Retirement Trust V, which had an expense ratio of 0.48%, as an investment option. After May 2014, the Plan offered Vanguard Retirement Trust III, which has an expense ratio of 0.38%. The Vanguard Retirement Trust funds averaged returns of 2% per year over five years.

63.     The Fund also offered the Vanguard Prime Money Market Fund as an investment option. Over the same five year period the Vanguard Prime Money Market Fund averaged returns of 0.12% per year.

64.     Both the Vanguard Retirement Trust III/V and the Vanguard Prime Money Market Fund are presented by the Plan as "Short-Term Reserves." There are no material additional risks or conditions on investments or withdrawals for the Vanguard Retirement Trust V as compared to the Vanguard Prime Money Market Fund.

65.     The major difference is that an investor in the Vanguard Retirement Trust cannot purchase a competing investment for 90 days after withdrawing his/her money. The only competing investment option out of the 30 plus options offered by the Plan is the Vanguard Intermediate-Term Treasury Fund.

66.     Offering both the Vanguard Retirement Trust V and the Vanguard Prime Money Market funds as Short-Term Reserve investment options in the Plan provided no benefit to the Plan participants, but instead potentially confused and misled the Plan participants. The Pioneer

Defendants recognized this issue as early as March 2013, but did not remove the Vanguard Prime Money Market fund as an investment option.

67.     As a result, many Plan participants who were eligible to invest in the Vanguard Retirement Trust stable value fund instead invested in the Vanguard Prime Money Market fund, which cost them an annual investment return of almost 2%.

68.     The following table compares the investment in the Vanguard Retirement Trust III/V stable value funds with the investment in the Vanguard Prime Money Market Fund.

| Year | Investment in Vanguard Retirement Trust III/V | Investment in Vanguard Prime Money Market Fund |
|---|---|---|
| 2012 | $21,909,217.00 | $16,213,732.00 |
| 2013 | $ 21,842,920.00 | $19,597,752.00 |
| 2014 | $24,389,254.00 | $16,534,704.00 |
| 2015 | $24,124,321.00 | $22,506,351.00 |

69.     Had the Plan participants invested the $74,852,539 in the Vanguard Retirement Trust III/V rather than the Vanguard Prime Money Market Fund, they would have realized over $1,500,000 in additional returns on their investment.

70.     The Pioneer Defendants recognized issues with the Vanguard Prime Money Market Fund beginning in September 2012, and considered dropping the Vanguard Prime Money Market Fund in March 2013 but failed to do so.

71.     In 2016 the Pioneer Defendants removed the Vanguard Prime Money Market Fund as a Plan investment option and transferred the account balances to the Vanguard

Retirement Trust III.

72.     The Pioneer Defendants did not replace the Vanguard Prime Money Market Fund with another money market fund or other Short-Term Reserve option. As a result, the sole short term reserve option currently available under the Plan is the Vanguard Retirement Trust III stable value fund.

73.     A prudent fiduciary would have evaluated and removed the Vanguard Prime Money Market Fund from the Plan investment options in 2012. The Pioneer Defendants breached their fiduciary duty by failing to remove the underperforming Vanguard Prime Money Market Fund in 2012.

74.     The Pioneer Defendants' failure to remove the Vanguard Prime Money Market Fund as an investment option caused Plan participants to lose over $1.5 million in investment returns.

**C.     The Pioneer Defendants Failed to Properly Disclose Recordkeeping Fees**

75.     The Participant Fee Disclosure Rule, 29 C.F.R. § 2550.404a-5, outlines the disclosure requirements that ERISA plan administrators must follow to comply with their fiduciary duties.

76.     The requirements for disclosing "administrative" costs are set forth in 29 C.F.R. § 2550.404a-5(c)(2). Where recordkeeping services are paid for through revenue-sharing arrangements, for example, where an investment fund offered in an ERISA plan transfers to a record-keeper some portion of its fees, Plan administrators must provide quarterly statements that include "an explanation that . . . some of the plan's administrative expenses for the preceding quarter were paid from the total annual operating expenses of one or more of the plan's designated investment alternatives (e.g., through revenue sharing arrangements, Rule 12b-1 fees,

sub-transfer agent fees)." 29 C.F.R. § 2550.404a-5(c)(2)(ii)(C).

77.     The Plan Participant Fee Disclosures do not contain the required disclosures regarding administrative fees charged to the Plan. In fact, the Pioneer Plan disclosures do not contain any reference to Plan administrative or recordkeeping fees. The Plan Participant Fee Disclosures fail to disclose that Plan participants are paying Vanguard an asset based recordkeeping fee through increased fund operating costs and indirect compensation from non-Vanguard funds.

78.     Moreover, the September 2016 Plan Summary, Plan Description and Prospectus states: "Pioneer USA pays all fees charged by the Trustee [Vanguard] for all services related to maintaining the investment funds under the Plan; however, operating and management fees associated with each investment fund are paid out of the investment's average net assets."

79.     The Prospectus language is misleading because it states Pioneer USA is paying Vanguard's administrative expenses when those expenses are actually being paid by the Plan participants through higher mutual fund operating expenses. The Disclosures also fail to disclose the recordkeeping fees are asset-based rather than pro-rata among the participants.

80.     The Pioneer Defendants' omissions and misleading statements are material because they mislead the Plan members regarding how the administrative costs of the Plan are paid in violation of their duty to disclose under 29 C.F.R. § 2550.404a-5.

81.     The Pioneer Defendants' violation of 29 C.F.R. § 2550.404a-5 is a breach of their fiduciary duty to the Plan.

### ERISA'S Fiduciary Standards

82.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Pioneer Defendants as Plan fiduciaries. Under ERISA, a fiduciary is expected to "discharge his

duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." *See* 29 U.S.C. § 1104(a)(1)(A)(I).

83.     A "prudent" fiduciary in discharging his or her duties, also must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," *see* 29 U.S.C. § 1104(a)(1)(B

84.     ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. 29 U.S.C. §1105(a) provides a cause of action against a fiduciary for (1) knowingly participating in a breach by another fiduciary; (2) enabling a breach by another fiduciary; or (3) knows of a breach of duty by another fiduciary and fails to cure such breach of duty.

85.     29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action plan under 29 U.S.C. §1109 to enforce a breaching fiduciary's liability to the Plan.

86.     Section 1109(a) provides a breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary," and "shall be subject to such other equitable or remedial relief as the court may deem appropriate."

## CLASS ACTION ALLEGATIONS

87.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

88.     Plaintiff Barrett has standing to bring these ERISA claims because there is a

causal connection between the Pioneer Defendants' actions and actual harm to an ERISA Plan in which Barrett participates. "A plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592-593 (8th Cir. 2009); *see also DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008) (§ 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries).

89.   In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2), Plaintiff Barrett seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representatives of, the following classes:

**(1) Administrative Fee Class and Investment Management Fee Class**

All participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan from July 1, 2011 through the date of judgment, excluding the Defendants.

**(2) Money Market Fund Class**

All participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan who, from July 1, 2011 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund.

90.   This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a.   Each Class includes as many as 4,410 or more members and is so large that joinder of all members is impracticable.

b.   There are questions of law and fact common to these Classes because the Pioneer Defendants owed fiduciary duties to the Plan and to all participants

and beneficiaries and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the losses to the Plan resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the court should impose in light of the Pioneer Defendants' breach of duty.

c.  Plaintiff Barrett's claims are typical of the claims of the Administrative Fee Class and Investment Management Fee Class because Plaintiff Barrett was a Plan participant during the time period at issue in this action and all participants in the Plan were harmed by the Pioneer Defendants' misconduct. Plaintiff Barrett has claims that are typical of the claims in the Money Market Fund Class because all participants invested in the Vanguard Money Market Fund were harmed by the Pioneer Defendants' misconduct.

d.  Plaintiff Barrett will adequately represent the Classes because he was a participant in the Plan and invested in the Vanguard Money Market Fund during the Class period, has no interest that is in conflict with the Classes, is committed to the vigorous representation of the Classes, and has engaged experienced and competent attorneys to represent the Classes.

e.  Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible

standards of conduct for the Pioneer Defendants with respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

91.     A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

92.     Plaintiff's counsel, Franklin D. Azar & Associates, P.C. will fairly and adequately represent the interests of the Classes and is best able to represent the interests of the Classes under Rule 23(g).

## FIRST CLAIM FOR RELIEF

**Breach of Duties of Loyalty and Prudence—Unreasonable recordkeeping Fees Against the Committee and the Individual Defendants**

24

93.     Plaintiff incorporates the prior allegations of the Amended Complaint.

94.     The scope of the fiduciary duties and responsibilities of the Committee and the Individual Defendants includes defraying reasonable expenses of administering the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, and acting with the care, skill, diligence, and prudence required by ERISA.

95.     ERISA imposes strict fiduciary duties of prudence and loyalty on covered retirement plan fiduciaries. An ERISA fiduciary must discharge his responsibility "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1). These duties require fiduciaries to act "solely in the interest of [plan] participants and beneficiaries." *Id*.

96.     Similarly, "us[ing] revenue sharing to benefit [the plan sponsor and recordkeeper] at the Plan's expense" while "failing to monitor and control recordkeeping fees" and "paying excessive revenue sharing" is a breach of fiduciary duties. *Tussey v. ABB, Inc.,* 746 F.3d 327, 336 (8th Cir. 2014).

97.     The Committee and the Individual Defendants breached their fiduciary duties to the Plan by, among other things, (1) paying Vanguard unreasonable recordkeeping fees; (2) failing to accept Vanguard's proposals to reduce recordkeeping fees and lower fund operating expenses; (3) failing to adequately leverage the Plan's size to reduce fees; and (4) failing to seek competitive bids for recordkeeping services at any time between 2009 and 2017.

98.     The Plan participants were damaged as a result of the Committee and the Individual Defendants' breach of their fiduciary duties because they paid excessive recordkeeping costs and realized a lower return on their Plan investments.

99.     Each Individual Defendant is personally liable under 29 U.S.C. §1109(a) to make

good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

100.   Total Plan losses will be determined at trial after complete discovery in this case and are illustrated herein based upon the limited information that has been made available to Plan participants to date.

101.   Each Pioneer Defendant also knowingly participated in each of the other Pioneer Defendants' breaches, knowing that such acts were a breach, enabled the other Pioneer Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Pioneer Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Pioneer Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

## SECOND CLAIM FOR RELIEF

### Breach of Duties of Loyalty and Prudence— Failure to Remove the Money Market Fund Against the Committee and the Individual Defendants

102.   Plaintiff incorporates the prior allegations of the Amended Complaint.

103.   The scope of the fiduciary duties and responsibilities of the Committee and the Individual Defendants includes direct responsibility for evaluating and monitoring the Plan's investments on an ongoing basis, eliminating imprudent ones, and ensuring that the Plan offers prudent investment options that will provide meaningful financial benefits to participants.

104.   The Committee and the Individual Defendants maintained the Vanguard Prime Money Market Fund and the Vanguard Retirement Trust III/V stable value fund as the Plan's Short-Term Reserve" investment options.

105.   Prudent fiduciaries of defined contribution plans have known since 2009 that money market funds have not kept pace with inflation. The Vanguard Prime Money Market

Fund, which holds very short-term, minimally yielding instruments, was expected to generate and in fact generated only microscopic returns for consecutive years that did not even come close to keeping pace with inflation.

106.    As a result, this investment option did not provide any meaningful retirement benefit to participants, and, in fact, participants in the money market fund fell further behind inflation each year in the fund.

107.    Because two alternative funds were offered in the same category, a substantial number of Plan participants invested in the lower yield money market fund rather than the available stable value fund. The Committee and the Individual Defendants were aware offering the Prime Money Market Fund was not in the Plan participants' best interests at least as early as March 2013, but failed to remove the Prime Money Market Fund as a Plan investment option.

108.    Plan fiduciaries have a continuing duty to monitor investments and remove imprudent ones. *Tibble,* 135 S. Ct. at 1829. The Committee and the Individual Defendants breached their fiduciary duties by failing to remove the Vanguard Prime Money Market Fund even though the Plan offered the higher yielding Vanguard Retirement Trust III/V stable value fund as an alternative investment.

109.    Had Plan participants invested in the Vanguard Retirement Trust III/V stable value fund rather than the Vanguard Prime Money Market Fund, Plan participants would have realized a higher return of more than  2% per year on their investment.

110.    Plan participants who invested in the Vanguard Prime Money Market Fund were damaged as a result of the Committee and the Individual Defendants' failure to timely remove the Prime Money Market Fund as an investment option under the Plan.

111.    Each Individual Defendant is personally liable under 29 U.S.C. §1109(a) to make

good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate. Total Plan losses will be determined at trial after complete discovery in this case and are illustrated herein based upon the limited information that has been made available to Plan participants to date.

112.     Each Pioneer Defendant also knowingly participated in each of the other Pioneer Defendants' breaches, knowing that such acts were a breach, enabled the other Pioneer Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Pioneer Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Pioneer Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

## THIRD CLAIM FOR RELIEF

### Violation of Rule 404a-5 Disclosure Rules

113.     Plaintiff incorporates the prior allegations of the Amended Complaint.

114.     The Participant Fee Disclosure Rule, 29 C.F.R. § 2550.404a-5 requires that where recordkeeping services are paid for through revenue-sharing arrangements, Plan administrators must provide "an explanation that . . . some of the plan's administrative expenses for the preceding quarter were paid from the total annual operating expenses of one or more of the plan's designated investment alternatives (e.g., through revenue sharing arrangements, Rule 12b-1 fees, sub-transfer agent fees)." 29 C.F.R. § 2550.404a-5(c)(2)(ii)(C).

115.     The Plan Participant Fee Disclosures do not contain the required disclosures regarding administrative fees charged to the Plan. The Disclosures are misleading and incomplete because they fail to disclose the recordkeeping fees are asset-based rather than pro-rata among the participants.

116.    The September 2016 Plan Summary, Plan Description and Prospectus contains misleading statements that imply Pioneer USA pays the Plan's recordkeeping and other fees charged by Vanguard.

117.    The Pioneer Defendants' omissions and misleading statements are material because they mislead the Plan members regarding the administrative costs of the Plan in violation of their duty to disclose under 29 C.F.R. § 2550.404a-5.

118.    The Pioneer Defendants' violation of 29 C.F.R. § 2550.404a-5 is a breach of their fiduciary duty to the Plan.

119.    Plan participants have been damaged by the Pioneer Defendants' breach of their fiduciary duty because they are unable to determine what administrative costs are incurred or how those costs are apportioned among the participants.

## FOURTH CLAIM FOR RELIEF

### Failure to Monitor Fiduciaries Against Pioneer USA

120.    Plaintiff incorporates the prior allegations of the Complaint.

121.    Pioneer USA is responsible for the appointment and removal of the Committee to serve as Plan Administrator, with sole responsibility for the administration of the Plan.

122.    Because Pioneer USA had explicit fiduciary responsibility to appoint and remove the Committee members, Pioneer USA had a fiduciary responsibility to monitor the performance of the other fiduciaries, including the Committee.

123.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not doing so.

124.    To the extent any of Pioneer USA's fiduciary responsibilities were delegated to another fiduciary, Pioneer USA's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

125.    Pioneer USA breached its fiduciary monitoring duties by, among other things:

a.    failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the excessive recordkeeping fees and the underperforming money market fund in violation of ERISA;

b.    failing to ensure that the monitored fiduciaries complied with their Rule 404a-5 disclosure duties to the Plan participants; and

c.    failing to remove appointees whose performance was inadequate in that they continued to make imprudent decisions, all to the detriment of Plan participants' retirement savings.

126.     Pioneer USA failed to implement or follow any rational process for monitoring the performance of the Committee and the Individual Defendants or determining whether the Committee and the Individual Defendants were fulfilling their fiduciary duties.

127.    As a consequence of Pioneer USA's breaches of its fiduciary duty to monitor, the Plan suffered substantial losses. Had Pioneer USA discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been avoided. Therefore, as a direct result of the breaches of fiduciary duty alleged herein, the Plan, and the Plaintiff and the other Class members, lost millions of dollars in their retirement savings.

## PRAYER FOR RELIEF

Plaintiff, on behalf of the Plan and all similarly situated Plan participants and

beneficiaries, respectfully requests the Court:

- certify the Classes, appoint Plaintiffs as class representatives, and appoint Franklin D. Azar & Associates, P.C. as Class Counsel;

- find and declare that the Pioneer Defendants have breached their fiduciary duties as described above;

- find and adjudge that Pioneer Defendants are liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

- order the Pioneer Defendants to provide an accounting necessary to determine the amounts Defendants must make good the Plan under §1109(a);

- order the Pioneer Defendants to comply with Rule 404a-5;

- award to the Plaintiffs and the Classes their attorney's fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

- order the payment of interest to the extent it is allowed by law; and

- grant other equitable or remedial relief as the Court deems appropriate.

Dated this 13th day of November, 2017

Franklin D. Azar & Associates, P.C.


By:    /s/ Paul R. Wood
          Franklin D. Azar
          H. Zachary Balkin
          Paul R. Wood
          14426 East Evans Avenue
          Aurora, CO 80014
          Telephone: (303) 757-3300

Facsimile: (303) 757-3206
azarf@fdazar.com
balkinz@fdazar.com
woodp@fdzar.com

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2017, I electronically filed and served the foregoing **PLAINTIFFS FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

| | | |
|---|---|---|
| Catalina J. Vergara | ☐ | by First-Class U.S. Mail |
| O'MELVENY & MYERS, LLP | ■ | by e-mail |
| 400 S. Hope Street | ☐ | by Share File |
| Los Angeles, CA  90071-2899 | ☐ | by Overnight Mail |
| cvergara@omm.com | ☐ | by CM/ECF system |
| | | |
| Shannon Barrett | ☐ | by First-Class U.S. Mail |
| O'MELVENY & MYERS, LLP | ■ | by e-mail |
| 1625 Eye Street NW | ☐ | by Share File |
| Washington, DC  20006-4061 | ☐ | by Overnight Mail |
| sbarrett@omm.com | ☐ | by CM/ECF system |
| | | |
| Michael J. Hofmann | ☐ | by First-Class U.S. Mail |
| Bryan Cave LLP | ■ | by e-mail |
| 1700 Lincoln St., Ste. 4100 | ☐ | by Share File |
| Denver, CO  80203 | ☐ | by Overnight Mail |
| Michael.hofmann@bryancave.com | ☐ | by CM/ECF system |

/s/ *Colette L. Foote*
Colette L. Foote