IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-1579-WJM-NYW

WILLIAM M. BARRETT, individually and as the representative of a class consisting of the participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan,

    Plaintiff,

v.

PIONEER NATURAL RESOURCES USA, INC.;
THE PIONEER NATURAL RESOURCES USA INC. 401(K) AND MATCHING PLAN COMMITTEE;
THERESA A. FAIRBROOK;
TODD C. ABBOTT;
W. PAUL MCDONALD;
MARGARET M. MONTEMAYOR;
THOMAS J. MURPHY;
CHRISTOPHER M. PAULSEN;
KERRY D. SCOTT;
SUSAN A. SPRATLEN;
LARRY N. PAULSEN;
MARK KLEINMAN; and
RICHARD P. DEALY,

    Defendants.

---

## ORDER GRANTING DEFENDANTS' EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Plaintiff William M. Barrett ("Plaintiff") sues various parties involved in the management of a retirement plan in which he previously participated (collectively, "Defendants"). Barrett argues that Defendants breached the fiduciary duties established by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

Currently before the Court is Defendants' Early Motion for Partial Summary Judgment ("Motion"), arguing that (1) Plaintiff lacks Article III standing to assert one of the fiduciary breaches alleged in his complaint; and (2) even if standing exists, the claim fails on its merits. (ECF No. 32.) Also before the Court is Defendants' Motion to Strike (ECF No. 55), which relates to what Defendants characterize as a surreply filed by Plaintiff in opposition to Defendants' second summary judgment argument. For the reasons explained below, the Court agrees with Defendants' Article III standing argument and grants partial summary judgment on that basis. Defendants' Motion to Strike is therefore moot.

The Court recognizes that Plaintiff recently filed a motion to add an additional plaintiff whose presence, Plaintiff argues, would cure the standing defect described below. (*See* ECF No. 79.) That motion is not yet ripe and this order is not meant to prejudge the merits of Plaintiff's most recent motion.

## I. BACKGROUND

### A. Allegations from the Complaint[1]

The Court accepts the following facts as true for present purposes.

Plaintiff participated in the Pioneer Natural Resources USA, Inc. 401(k) and Matching Plan ("Plan") from 2011 until September 2017. (ECF No. 57 ¶ 1.) The Plan was a defined contribution plan (as opposed to a defined benefit plan), meaning that each Plan participant's benefits turned on the participant's contributions, the employer's matching contributions (if any), and investment performance. (*Id.* ¶¶ 2–3.)

---

[1] These allegations come from Plaintiff's First Amended Complaint (ECF No. 57), which was filed after close of briefing on Defendants' Motion. The differences between the First Amended Complaint and the original Complaint do not affect the Court's analysis of Defendants' Motion, so the Court will treat the Motion as if directed at the First Amended Complaint.

Administrative and management fees, such as recordkeeping fees, can weigh down investment performance. (*Id.* ¶¶ 4, 7.) With over $665 million in assets, the Plan was large enough to possess the bargaining power needed to negotiate low administrative and management fees, and to negotiate for participation in mutual funds at lower expense ratios. (*Id.* ¶ 6.) The Plan, however, did not take advantage of this bargaining power. It instead continued to pay management fees to its designated recordkeeper (Vanguard Group Inc.) that were allegedly well above the industry average. (*Id.* ¶¶ 29–56.)

In addition, the Plan imprudently gave its participants the choice between two "short-term reserve" funds, the "Retirement Trust" and the "Money Market Fund." (*Id.* ¶ 64.) The Retirement Trust "averaged returns of 2% per year over five years" while the Money Market Fund "averaged returns of 0.12% per year" over the same time period. (*Id.* ¶¶ 62–63.) Offering both funds "provided no benefit to the Plan participants, but instead potentially confused and misled the Plan participants." (*Id.* ¶ 66.) Defendants "recognized this issue as early as March 2013, but did not remove the [Money Market Fund] as an investment option" until 2016. (*Id.* ¶¶ 66, 71.) "As a result, many Plan participants who were eligible to invest in the [Retirement Trust] instead invested in the [Money Market Fund], which cost them an annual investment return of almost 2%." (*Id.* ¶ 67.)

Based on these allegations, Plaintiff asserts four claims for relief. Claim 1 asserts breaches of the duties of loyalty and prudence based on the unreasonably high recordkeeping fees. (*Id.* ¶¶ 93–101.) Claim 2 asserts breaches of the same duties for maintaining the Money Market Fund as a Plan option for three years after it became

3

clear that it was an imprudent investment choice. (*Id.* ¶¶ 102–12.) Claim 3 is closely related to Claim 1 and asserts a violation of ERISA regulations regarding disclosure of administrative fees. (*Id.* ¶¶ 113–19.) Claim 4 accuses Defendant Pioneer Natural Resources USA, Inc. of failure to monitor the fiduciaries responsible for administering the Plan. (*Id.* ¶¶ 120–27.)

Plaintiff seeks to assert these claims on a class-action basis. (*Id.* ¶¶ 87–92.) He proposes two separate classes:

> **(1) Administrative Fee Class and Investment Management Fee Class**
>
> All participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan from July 1, 2011 through the date of judgment, excluding the Defendants.
>
> **(2) Money Market Fund Class**
>
> All participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan who, from July 1, 2011 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund.

(*Id.* ¶ 89 (boldface in original).)

**B.     Undisputed Facts**

Defendants' Motion has established certain facts as undisputed for summary judgment purposes, but only one of those facts is relevant to the Court's disposition: Plaintiff himself never invested in the Money Market Fund. (ECF No. 32 at 8, ¶ 1.)[2]

## II.  LEGAL STANDARD

Article III of the U.S. Constitution restricts federal courts to deciding "cases" and

---

[2] All ECF page citations refer to the page number in the ECF header, which does not always match the document's internal pagination, particularly in documents with separately paginated prefatory material such as a table of contents.

"controversies." See U.S. Const. art. III, § 2, cl. 1. These words have been interpreted to restrict federal courts from giving "advisory opinions," *Flast v. Cohen*, 392 U.S. 83, 96 (1968), meaning that a federal court may not resolve questions in the abstract, but instead may only resolve "disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties," *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).

To safeguard this restriction, the Supreme Court has articulated a three-element test for "Article III standing":

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted; certain alterations incorporated). Importantly for this case, "the plaintiff bears the burden of proof" to establish that these elements exist. *Id.* at 561; *see also United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994) ("The party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction. The facts supporting jurisdiction must be affirmatively alleged, and if challenged, the burden is on the party claiming that the court has subject matter jurisdiction.").

### III. ANALYSIS

Defendants argue that Plaintiff has no standing to assert Claim 2, concerning the Money Market Fund, because he never invested in that fund and cannot invest in it in the future because the Plan no longer offers it. (ECF No. 32 at 10.) The parties cite

competing threads of case law on this question. The parties have cited no on-point authority from the Tenth Circuit.

On Defendants' side are a number of cases stating that a plaintiff in an action such as this must demonstrate that he or she has been injured by each alleged fiduciary breach. *See Kendall v. Employees Ret. Plan of Avon Prod.*, 561 F.3d 112, 119–20 (2d Cir. 2009), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608–09 (6th Cir. 2007); *In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 917 F. Supp. 2d 231, 235 (S.D.N.Y. 2013); *David v. Alphin*, 817 F. Supp. 2d 764, 767 n.2 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013); *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 264–67 (D. Mass. 2008).

On Plaintiff's side are a number of cases apparently reaching the contrary conclusion. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592–93 (8th Cir. 2009); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 155–59 (S.D.N.Y. 2017); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 (D. Minn. 2014); *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012); *Walsh v. Marsh & McLennan Cos., Inc.*, 2006 WL 734899, at *1 (D. Md. Feb. 27, 2006). These cases generally find great significance in the fact that any recovery a plaintiff wins must be paid to the plan in question, not to the plaintiff. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). Thus, they reason that a plaintiff who has suffered some plan-related injury may sue on the plan's behalf for that

injury as well as other plan-related injuries that other plan participants suffered. Some cases also invoke notions of third-party standing once a plaintiff has established his or her own injury.

The most thoroughly-reasoned of Plaintiff's cases are less helpful to him then he represents. In *Braden*, the plaintiff alleged an injury based on excessive fees, similar to the injury alleged in this case. 588 F.3d at 590. The district court held that the plaintiff lacked standing to pursue claims for breaches before the date the plaintiff contributed to his retirement plan. *Id.* The Eighth Circuit reversed, holding that the plaintiff alleged the same injury supposedly suffered by all members of the putative class and so "[h]is own recovery will stand or fall with that of the Plan." *Id.* at 592–93. The temporal aspect of his claim was not a matter of Article III standing, but simply of whether ERISA permits the sort of lawsuit the plaintiff brought. *Id.* *Braden* is thus distinguishable because Plaintiff does not assert the same injury supposedly suffered by those who invested in the Money Market Fund. No recovery on the Plan's behalf related to the Money Market Fund will ever inure to Plaintiff.

*Glass Dimensions* is also distinguishable. There, the plan in question offered 260 investment choices, of which the plaintiff had only invested in three. 285 F.R.D. at 174–75. However, the plaintiff alleged a practice of fiduciary mismanagement that affected all 260 investment choices, and so the district court ruled that the plaintiff had standing to sue for classwide relief as to all 260 choices. *Id.* *Krueger* is similar because the plaintiffs there alleged fiduciary mismanagement affecting all of the available investment options collectively. 304 F.R.D. at 564, 566–67. *Walsh* falls into the same category, 2006 WL 734899, at *1, as does *Leber*, 323 F.R.D. at 156–57. These cases

7

support Plaintiff's standing to bring his Claims 1 and 3, regarding excessive fees, but not Claim 2. Claim 2 does not allege that all investment choices or some sensibly grouped subset were offered imprudently. It alleges only that the Money Market Fund was an imprudent offering alongside the Retirement Trust.

Plaintiff apparently recognizes this distinction because he argues in his response brief that he really only asserts one claim of "overall Plan mismanagement," of which "retention of the [Money Market Fund] was [one] part." (ECF No. 39 at 7.) But there is no cause of action for "overall Plan mismanagement." A plaintiff must prove that specific acts or omissions were a breach of an ERISA fiduciary's statutory duties. *See* 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ."); *id.* § 1132(a)(3) ("A civil action may be brought * * * by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .").

To the extent Plaintiff asserts (or his cited cases stand for) the proposition that any breach of an ERISA-imposed duty gives injured plan participants standing to sue for that breach *and* any others they can think of, regardless of whether the other breaches injured the participants, the Court disagrees. "Injury in fact" is part of the "irreducible constitutional minimum" of Article III standing. *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). And although plaintiffs are sometimes granted standing to assert the

rights of parties not before the court, these cases inevitably involve a single practice by the defendant that injures both the plaintiff and a third party, although in different ways. *See generally* 13A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3531.9.2 (3d ed., Apr. 2018 update).

Here, Plaintiff does not allege a single practice as to the Money Market Fund that injured both him and Money Market Fund investors. Plaintiff's own recognition of this deficiency is best demonstrated by his request for a separate class definition specific to those investors. (ECF No. 57 ¶ 89.)[3] The Court accordingly finds that Plaintiff has failed to carry his burden to demonstrate Article III standing, and so Claim 2 must be dismissed without prejudice for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Early Motion for Partial Summary Judgment (ECF No. 32) is GRANTED;

2. Claim 2 of the First Amended Complaint (ECF No. 57) is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction; and

3. Defendants' Motion to Strike (ECF No. 55) is DENIED AS MOOT.

---

[3] In his Motion for Class Certification, filed after the Motion at issue here, Plaintiff has reframed this as a request for a class comprising all participants in the Plan and then a subclass comprising those who invested in the Money Market Fund. (ECF No. 61 at 2.) This request nonetheless emphasizes the difference between his claims.

Dated this 29th day of June, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge