# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: Civil Action No.: 1:17-cv-01579-WJM-NYW

WILLIAM M. BARRETT, Individually, and DENICE E. BATLA, HEATHER L. COBERLY, LELAND W. GULLEY, and BLAKE A. UMSTED, Individually and as the representatives of a class consisting of the participants and beneficiaries of the Pioneer Natural Resources USA, Inc. 401(K) and Matching Plan,

 Plaintiffs,

v.

PIONEER NATURAL RESOURCES USA, INC.; THE PIONEER NATURAL RESOURCES USA INC. 401(K) AND MATCHING PLAN COMMITTEE; THERESA A. FAIRBROOK; TODD C. ABBOTT; W. PAUL MCDONALD; MARGARET M. MONTEMAYOR; THOMAS J. MURPHY; CHRISTOPHER M. PAULSEN; KERRY D. SCOTT; SUSAN A. SPRATLEN; LARRY N. PAULSEN; MARK KLEINMAN; and RICHARD P. DEALY

 Defendants.

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs William Barrett, Denice Batla, Heather Coberly, Leland Gulley, and Blake Umsted ("Plaintiffs") move the Court for an Order granting Final Approval of the settlement of this class action under Fed. R. Civ. P. 23(e). As grounds, Plaintiffs state:

**I. INTRODUCTION**

On February 21, 2019, the Court granted preliminary approval of a settlement agreement (the "Settlement") between Plaintiffs and Defendants Pioneer Natural Resources USA, Inc.; the Pioneer Natural Resources USA Inc. 401(k) and Matching Plan Committee; Theresa A. Fairbrook; Todd C. Abbott; W. Paul McDonald; Margaret M. Montemayor; Thomas J. Murphy; Christopher M. Paulsen; Kerry D. Scott; Susan A. Spratlen; Larry N. Paulsen; Mark Kleinman; and Richard P. Dealy ("Defendants"). Dckt. # 113. The Court found that "(i) the Settlement resulted from extensive arms-length negotiations; (ii) the Settlement was concluded after counsel for the Parties had conducted adequate investigation; and (iii) the Settlement terms are

1

Case No. 1:17-cv-01579-WJM-NYW   Document 116   filed 07/24/19   USDC Colorado
pg 2 of 13

sufficiently fair, reasonable, adequate and in the best interests of the Settlement Class." *Id.* at p. 3.

The Settlement creates a non-reversionary common fund of $500,000. The Settlement will result in payment to all Class Members who were current participants of the plan as of December 2018, and to those Class Members who were no longer participants of the plan in December 2018 so long as they complete a rudimentary claim form. The exact amount paid to each Class Member will be determined based on a formula tied to the amount of money they had invested in the Plan during the Class Period. By separate motion, Class Counsel seeks an award of $200,000 (40%) for both attorneys' fees and costs, and service awards for the class representatives totaling $10,000.

For the reasons described below, the Settlement satisfies the requirements of Rules 23(b)(1)(A) and 23(e), and the Court should enter an Order finally approving the Settlement and ordering the Settlement Administrator to distribute funds to the Class.

## II.   PROCEDURAL HISTORY

After several months of investigation, Plaintiff Barrett brought this case on June 28, 2017 alleging ERISA claims against Defendants for causing the Plan to pay excessive recordkeeping fees, improperly offering retail class mutual fund shares when less expensive admiral or institutional class shares were available, and imprudently retaining the Money Market Fund as a Plan investment option. Dckt. #1; Declaration of Paul R. Wood in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Wood Dec."), filed herewith, ¶4. On October 30, 2017, Defendants filed a Motion for Partial Summary Judgment challenging Barrett's standing to bring the money market claim and seeking determination as a matter of law that retention of the Money Market Fund was not imprudent. Dckt. # 32. On

2

December 22, 2017, Barrett filed his First Amended Complaint which alleged claims related to recordkeeping fees and the Money Market Fund. Dckt. # 34.1.

On February 23, 2018, Plaintiff Barrett filed his Motion to Certify the Class. Dckt. # 61. Defendants objected and challenged Barrett's suitability as a class representative. Dckt. # 64.

Plaintiffs conducted full-day depositions of two past and present chairmen of the Plan Committee and a Rule 30(b)(6) deposition of the Committee. Wood Dec., ¶5. Plaintiffs also requested and received approximately 15,500 pages of documents from Defendants, 9,600 pages of documents from the Plan investment advisor Lockton Companies, LLC and 11,450 pages of documents from the Plan recordkeeper Vanguard, Inc. *Id*. Defendants served written discovery and deposed Plaintiff Barrett for five hours. *Id*., ¶6.

On May 29, 2018 Plaintiffs identified experts for fiduciary duty liability (Marcia Wagner, a nationally recognized ERISA expert), reasonableness of recordkeeping fees (Francis Vitagliano), and damages (Pacey & Associates), and submitted their expert reports. *Id*., ¶7. On June 22, Defendants identified Steven Gissiner as a rebuttal expert for liability and reasonableness of fees. *Id*., ¶8.

On June 29, 2018, the Court granted Defendants' Motion for Partial Summary Judgment, finding Barrett lacked standing to assert the Money Market Fund claim. Dckt. # 82, p. 9. In a separate order, the Court found Barrett was not an adequate class representative because he could not seek prospective relief and ordered Barrett to amend the complaint to add additional class representatives. Dckt. # 84. On August 24, 2018, Plaintiffs Batla, Coberly, Gulley, and Umsted, along with Barrett, filed the Second Amended Complaint. Dckt. # 93. The Court reopened discovery regarding class certification, ordered Defendants to refile their summary judgment motion regarding the Money Market Fund claim and ordered Plaintiffs to file a class certification

3

motion by October 31, 2018. Dckt. # 94. Expert discovery was extended to December 15, 2018. Wood Decl., ¶11.

Defendants served additional written discovery on Plaintiffs Batla, Coberly, Gulley, and Umsted, and scheduled their depositions for mid-October. *Id.*, ¶10. Expert depositions were scheduled for the week of December 10 in Boston, Massachusetts. *Id.*, ¶11.

On July 17, 2018, the parties unsuccessfully mediated this action with private mediator Robert Meyer of JAMS *Id.*, ¶9. The developments of July and August, the expense of upcoming depositions, and the uncertain outcome of the case caused both parties to reevaluate settlement. On October 5, 2018, both parties agreed to the mediator's proposal and sought a stay of the case pending preliminary approval of the settlement. *Id.*, ¶12. On December 10, 2018, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement. Dckt. # 110. As part of the Settlement, Plaintiffs filed a Third Amended Complaint (Dckt. #110-9), which the Court accepted for filing for settlement purposes only. Dckt. #113, p. 2. The Third Amended Complaint contained two claims for relief. The first claim alleges that the Pioneer 401(k) Committee and the individual Defendants breached their duties under 29 U.S.C. § 1104(a)(1) by causing the Pioneer Natural Resources USA Inc. 401(k) and Matching Plan (the "Plan") to pay unreasonable recordkeeping fees to Vanguard. The second claim for relief alleges the Plan sponsor, Pioneer Natural Resources USA Inc., failed to monitor the performance of the Plan Committee and its members to assure they were fulfilling their fiduciary duties to the Plan and its participants.

**III.  TERMS OF THE SETTLEMENT, CLASS NOTICE AND ATTORNEYS' FEES**

    **A.  Terms of the Settlement**

Defendants will deposit $500,000.00 (the "Settlement Amount") in an interest-bearing

4

settlement account (the "Escrow Account"). Settlement Agreement, ¶5.1. The Escrow Account will be used to pay the participants' recoveries, Class Counsel's Costs, Administrative Costs of the Settlement, and Class Representative Service Awards as described in the Settlement Agreement. *Id*. In exchange for the $500,000 payment, the Class will release all Defendants from liability arising out of the claims in the Third Amended Complaint and dismiss those claims with prejudice.

> The Court preliminarily approved the following Settlement Class ("Class") (Dckt. #113):
>
> All Current and Former Participants and Beneficiaries of the Pioneer 401(k) and Matching Plan who maintained a balance of any amount in the Plan at any point from June 28, 2011 through December 10, 2018, excluding Defendants.

The Settlement Amount will be distributed to the Class by the Settlement Administrator after payment of administrative expenses, attorneys' fees and costs and service awards, according to the Plan of Allocation. Because the recordkeeping fees were paid through revenue sharing, Class Members with higher account balances paid proportionately more for those services. Under the Plan of Allocation, the Settlement Administrator will calculate each Class Member's payment pro rata based on the Settlement Class Member's average year-ending Plan account balance over the Class Period, starting with December 31, 2011 and ending with December 31, 2018. Amended Settlement Agreement (Dckt. #112-1), ¶ 5.2 and Plan of Allocation (Dckt. #110-5).

Class Members who currently have an open Plan account will have their portion of the Settlement Amount deposited directly into their 401(k) account, thus avoiding potentially unfavorable tax consequences. Class Members who no longer have an open Plan account and who completed and returned the approved claim form may receive payment directly or elect to have the payment made to a qualified retirement account identified by them on the claim form.

5

*Id.* After calculating each Class Member's pro rata share of the Settlement Amount, the Settlement Administrator will transfer the funds owed to the Class Members with open accounts to the Plan's trustee, who will credit the Plan account of each Current Participant in an amount equal to his or her Settlement payment, as calculated by the Plan Administrator. Settlement Agreement, ¶5.2. The Settlement Administrator shall mail settlement checks to former participants who have confirmed their mailing addresses. *Id.*

Although the Settlement does not provide non-monetary relief, Defendants changed the way the Plan paid recordkeeping fees from revenue sharing to a fixed annual per-participant fee of $66.00 while the lawsuit was pending. Wood Dec., ¶14.

### B.  Class Notice and Member Response

On March 26, 2019 Angeion received the class list containing 4,608 current Plan participants and 3,014 former Plan participants. Declaration of Jenny Shawver ("Shawver Dec."), ¶8. Pursuant to the notice plan approved by the Court, the Settlement Administrator e-mailed or mailed the Notice on April 8, 2019. *Id.*, ¶10.

Angeion e-mailed the Notice to 2,832 current participants. *Id.* A total of 134 e-mail notices were identified as undeliverable. *Id.*, ¶15. Angeion mailed notice to those 134 Class Members at the address provided by Defendants. *Id.*

Angeion mailed the Notice to 1,776 current participants and 3,014 former participants. *Id.*, ¶10. A total of 31 Notices were returned to Angeion as undeliverable with a forwarding address. Angeion re-mailed those 31 Notices. *Id.*, ¶12. A total of 506 Notices were returned to Angeion as undeliverable without a forwarding address. *Id.*, ¶13. Angeion conducted skip traces, identified new addresses for 408 of the undeliverable Notices, and re-mailed the Notices to the new addresses. *Id.*, ¶¶13-14. A total of 156 Notices that were forwarded or re-mailed were

6

returned as undeliverable a second time. *Id*., ¶16.

The deadline for Former Participant Class Members to submit a Claim Form was July 10, 2019. As of the date of this Motion, Angeion has received 743 Claim Form submissions from Former Participants of the Plan. *Id*., ¶18. Of the claims received, 11 contained deficiencies. *Id*., ¶19. On July 19, 2019, the Claims Administrator mailed deficiency notices to the 11 former participants that identified the deficiency and gave the Class Members until August 5, 2019 to correct the deficiency. *Id*. As of the date of this filing, no corrected claim forms had been received. *Id*.

On April 8, 2019, Angeion established the following website devoted to this Settlement: www.Barrett401kSettlement.com. The Settlement Website contains general information about the Settlement, Court documents, as well as important dates and deadlines pertinent to this matter. The Settlement Website also contains a "Contact Us" page whereby Class Members can contact Angeion via email to submit additional questions regarding the Settlement. *Id*., ¶17. In addition, Class Counsel received more than 130 calls from Class Members with questions about the Settlement and former participant claim form. Wood Dec., ¶15.

### C.  Class Member Objections

The Notice informed Class Members that they could file objections to the Settlement on or before July 10, 2019.  No Class Member has filed an objection to the Settlement. Wood Dec., ¶16; Shawver Dec., ¶20.

### D.  Motion for Attorneys' Fees, Reimbursable Costs and Service Awards

Per the Court's Order, concurrently with this Motion Plaintiffs have filed a separate motion for an award of $200,000 for attorneys' fees and reimbursable expenses and for service awards totaling $10,000 for all Plaintiffs.

7

## IV.   THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A.   The Class Should be Certified

The Court previously preliminarily certified a Settlement Class under Fed. R. Civ. P. 23(b)(1)(A) consisting of:

> All Current and Former Participants and Beneficiaries of the Pioneer 401(k) and Matching Plan who maintained a balance of any amount in the Plan at any point from June 28, 2011 through December 10, 2018, excluding Defendants.

Dckt. #113, p. 2.  The Court further found the class representatives and class counsel were adequate to represent the class. *Id.* There is no reason to disturb this ruling.

### B.   The Settlement Meets the Standard for Approval

Settlement of a class action requires court approval, and the court may only approve a settlement "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed class action settlement is committed to the sound discretion of the trial court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

In this circuit, a class action may be settled "where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186 (10th Cir. 2002)). In evaluating fairness, this Court considers four factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Tuten*, 41 F. Supp. 3d at 1007 (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)); *Rutter & Wilbanks*

8

*Corp.*, 314 F.3d at 1188.[1]

### 1. The Proposed Settlement Was Fairly and Honestly Negotiated.

A class settlement is presumed to be fair, adequate, and reasonable if it results from arm's-length negotiations by experienced and capable counsel and meaningful discovery. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 130 (D. Colo. 2016). Here, the Settlement was the product of lengthy, arm's-length negotiations conducted between experienced counsel with the assistance of an experienced ERISA mediator after extensive discovery and litigation. Wood Dec., ¶13. As set forth above, the parties engaged in extensive document production and conducted four depositions. Primary and rebuttal expert disclosure was completed.

The parties attended a mediation in Los Angeles on July 17, 2019 before Robert Meyer of JAMS after completing discovery and expert disclosure. After the mediation ended unsuccessfully, the parties continued to engage with the mediator. Following the Court's July and August rulings regarding class certification and the filing of the Second Amended Complaint, the parties agreed to the mediator's proposal and settled the case. *Id.*, ¶12. This factor weighs in favor of approval.

### 2. Serious Questions of Law and Fact Existed.

Serious questions of law and fact existed in this case, which placed the ultimate outcome of the litigation in doubt. The primary issue in this case is whether the recordkeeping fee was

---

[1] Effective December 1, 2018, Rule 23(e)(2) was amended to list factors to guide a court's fairness inquiry. Fed. R. Civ. P. 23(e)(2). However, the 2018 Committee Notes indicate the amendment was not intended to displace the factors each circuit had developed in considering the fairness of a Rule 23 settlement, "but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (utilizing circuit's historical fairness considerations in evaluating settlement) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes).

reasonable.[2] The only way to resolve that issue would have been through expert testimony at trial, and it is virtually impossible to predict with any certainty whose testimony the Court would have credited. Plaintiffs faced great uncertainty regarding the outcome of this claim.

In order to have succeeded on the merits, Plaintiffs were required to prove that the fees paid for recordkeeping services were excessive and that Defendants' process for permitting the Plan to pay such fees was flawed or imprudent. Plaintiffs deposed two past and present chairmen of the Plan Committee and conducted a Rule 30(b)(6) deposition of the Committee, and reviewed extensive document productions from Defendants, Lockton Advisors, and Vanguard. Wood Dec., ¶5. Plaintiffs retained Marcia Wagner, a recognized ERISA expert, who opined that the process followed by Defendants was flawed, Francis Vitagliano, who opined that a reasonable recordkeeping fee would be $40 per participant, and Pacey Economics, who calculated between $1.2 million and $1.4 million in damages based on Vitagliano's opinion that a reasonable recordkeeping fee was $40 per participant per year for the entire class period. *Id*., ¶7. Defendants deposed Barrett and retained Steven Gissiner as a rebuttal expert, who opined that Defendants' fees were reasonable under the circumstances, that Vitagliano's methodology was flawed, and that it is impossible to calculate a blanket "reasonable fee." *Id*., ¶8. Discovery was complete with the exception of expert depositions that were scheduled for December 10-14 in Boston, Massachusetts. *Id*., ¶11. Further, even in settlement, Pioneer continued to vigorously defend itself, including in the Notice that Defendants denied "the allegations in the case and assert[ed] that their conduct was entirely proper[,]" (Dckt. #113-1) and identified for the Class the defenses Pioneer would have asserted had litigation continued. Thus, the claim's outcome is

---

[2] As described in the Motion for Preliminary Approval, Plaintiffs originally alleged that the Plan had imprudently maintained both a stable value fund and a money market fund as investment options. That claim was dismissed without prejudice and assigned no value in the Settlement.

unclear, and resolution would have required further, costly litigation, trial, and likely appeal. This factor weighs in favor of approval.

### 3. The Value of An Immediate Recovery Significantly Outweighs the Possibility of Future Relief After Protracted and Expensive Litigation.

The value of the settlement must be weighed against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb*, 11 F.3d at 1015. For the reasons set forth in the prior section, there was a serious question regarding what a reasonable recordkeeping fee would be. The Settlement equals between 37% and 42% of Plaintiffs' damages calculation. In the face of an uncertain outcome and Pioneer's clear intent to fight this litigation through trial and appeal if necessary, payment of a sum certain now significantly outweighs the mere possibility of future relief following the additional time and costs associated with preparing for and attending trial, appeals, and any post-appeal litigation. This factor weighs in favor of approval.

### 4. The Parties Believe the Settlement Is Fair and Reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002). At the time of preliminary settlement, counsel for both parties, who are attorneys with substantial experience in complex litigation and ERISA class actions, supported the settlement and nothing has occurred to change that position. Further, no Class Members objected, indicating the Class believes the Settlement is reasonable. This factor weighs in favor of approval.

## V. CONCLUSION

Plaintiffs respectfully request that the Court finally approve the proposed Settlement Agreement as fair, reasonable, and adequate, and enter the proposed Final Order and Judgment.

Dated this 24th day of July 2019.

        Franklin D. Azar & Associates, P.C.

        By:   /s/ Paul R. Wood
             Paul R. Wood
             Keith Scranton
             14426 East Evans Avenue
             Aurora, CO 80014
             Telephone: (303) 757-3300
             Facsimile: (303) 757-3206
             woodp@fdzar.com
             scrantonk@fdazar.com
             glassd@fdazar.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2019, I electronically filed and served the foregoing **UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

| | | |
|---|---|---|
| Catalina J. Vergara | ☐ | by First-Class U.S. Mail |
| O'MELVENY & MYERS, LLP | ☐ | by e-mail |
| 400 S. Hope Street | ☐ | by Share File |
| Los Angeles, CA 90071-2899 | ☐ | by Overnight Mail |
| cvergara@omm.com | ■ | by CM/ECF system |
| | | |
| Shannon Barrett | ☐ | by First-Class U.S. Mail |
| O'MELVENY & MYERS, LLP | ☐ | by e-mail |
| 1625 Eye Street NW | ☐ | by Share File |
| Washington, DC 20006-4061 | ☐ | by Overnight Mail |
| sbarrett@omm.com | ■ | by CM/ECF system |
| | | |
| Michael J. Hofmann | ☐ | by First-Class U.S. Mail |
| Bryan Cave LLP | ☐ | by e-mail |
| 1700 Lincoln St., Ste. 4100 | ☐ | by Share File |
| Denver, CO 80203 | ☐ | by Overnight Mail |
| Michael.hofmann@bryancave.com | ■ | by CM/ECF system |

/s/ *Stephanie Chateauneuf*
Stephanie Chateauneuf